CELIA ENGELSON, PETITIONER-RESPONDENT, v. J. F. ZUCKER COMPANY, RESPONDENT-APPELLANT, AND CELIA ENGELSON, PETITIONER-RESPONDENT, v. REMCO INDUSTRIES, INC., RESPONDENT-RESPON-DENT.

Essex County Court, Law Division

Argued February 18, 1972—Decided March 9, 1972.

Mr. *Henry Harris* for petitioner-respondent (*Mrs. Genevieve Flicker* on the brief; Messrs. *Rothbard, Harris & Oxfeld,* attorneys).

Mr. *Thomas J. Osborne, Jr.* for respondent-appellant (*Messrs. Vaccaro & Osborne,* attorneys).

Mr. *Thomas H. Green* for respondent-respondent.

HARRISON, J. C. C. This appeal from awards of the Division of Workmen's Compensation raises the novel question of liability for death benefits where an employee sustained a compensable heart attack while working for one employer, obtained new employment upon recovery and after the passage of more than 3½ years sustained another compensable heart attack, followed by his rapid deterioration culminating in death.

Petitioner Celia Engelson applied for dependents' death benefits for herself and her six-year-old daughter pursuant to *N. J. S. A.* 34:15–7 *et seq.* The Division found both

employers equally liable for the death benefits, directing each to pay its half on the basis of the salary paid decedent while in its employ. The first employer appeals, disclaiming any obligation for death benefits. Petitioner filed a pro forma cross-appeal to protect against the possible reversal of the Division's judgment against both employers. The second employer has filed no appeal or cross-appeal.

The basic issue on this appeal is whether the first employer should be held equally liable for death benefits with the successor employer. Considering the case *de novo* upon the record before the Division, I find the essential facts to be as follows:

Although only 45 years old, Jack Engelson apparently had an advanced arteriosclerotic condition. On June 12, 1963, while working for respondent-appellant Zucker at a weekly wage of $130, he suffered an acute myocardial infarction due to his work efforts, for which the Division awarded him temporary disability for 20 weeks and permanent disability at 40% of permanent partial total disability.

After recovering from this attack Engelson went to work for respondent Remco, receiving a reduced weekly salary of $84.37 for a job requiring less effort and less hours, 20 hours a week, because of his impaired physical condition. Remco showed this consideration for Engelson as a former employee. On April 3, 1967, three years and ten months after his 1963 attack, Engelson, after some strenuous exertions in the course of his employment by Remco, suffered a second heart attack for which he was hospitalized with a diagnosis of arteriosclerotic heart disease with a very extensive anteroseptal myocardial infarction.

The Workmen's Compensation Division on March 21, 1968 determined Engelson to be 100% disabled as a result of the second attack but found no causal relation between the 1963 and the 1967 attacks. The Division credited the 40% awarded after the 1963 attack as part of the 100% and

held that the 1963 award had relieved Zucker of all obligations in the proceedings in that matter for any further temporary or permanent disability. This holding was based on the medical testimony that Engelson's heart condition had "stabilized" between the 1963 and 1967 attacks, meaning that he had a healed infarction which remained unchanged or stationary for an appreciable length of time, from June 1963 to April 1967.

After the April 1967 attack Engelson became unemployable as a cardiac cripple. He was in congestive heart failure and was hospitalized four times during the two years following the April 1967 infarction; in August 1968 for coronary insufficiency, in November 1968 and February 1969 for anteroseptal infarctions, and on May 21, 1969 for extreme heart failure. He died at his home on June 23, 1969. There was no autopsy. The death certificate, as completed by his treating physician, Dr. Saul Lieb, stated the cause of death as being arteriosclerotic heart disease and multiple myocardial infarctions.

The issue of Zucker's liability for death benefits turns upon the ascertainment of a medical fact issue: Was there a sufficient causal relation between the compensable infarction of June 1963 and the death of June 23, 1969? Remco, the second employer, supports the petitioner's position. It urges that both the June 1963 and the 1967 episodes contributed substantially to the death in 1969. Therefore, both employers are liable for the dependents' death benefits.

Dr. Lieb, decedent's attending physician, testified that the 1963 infarction made decedent more susceptible to the 1967 infarction. Later in his testimony he said decedent died of congestive heart failure and not as a result of myocardial infarction "because the heart was no longer an efficient mechanism, an efficient pump. It had lost its elasticity and pumping power with each of the several previous myocardial infarctions, each independent but each in its turn injuring the heart."

Dr. Sanford Lewis, also an internist, testified on behalf of Remco, the last employer. He had examined Engelson for Remco after the second attack in 1967. He found Engelson had a biochemical situation which was "impossible." He testified:

A. * * * This man was susceptible to new myocardial infarctions not because he had had a previous myocardial infarction at work but because he had a biochemical situation producing arteriosclerosis of his coronary arteries. If he never had that coronary at work he would still be equally susceptible to new infarctions that we talked about. It's the biochemistry and the arteriosclerosis that produces the susceptibility.

Q. In other words, the progression of this arteriosclerotic process would inevitably have produced this second, third and fourth infarctions?

A. That's right.

He also testified that if a patient succumbs to heart failure, it is at least in part due to the total of damages of those infarctions to the heart as a pump. But he was also definite in saying that one infarction does not make a person susceptible to another, disagreeing with Dr. Lieb on this subject.

Dr. Jacob S. York, testifying for the first employer, Zucker, gave his opinion that there was no causal relationship between the June 1963 episode and the patient's demise in June 1969. He had examined the patient on October 12, 1963 after the first attack, and on October 16, 1967 after the second attack. His opinion was given in answer to a hypothetical question which did not reflect an entry in a hospital record that indicated decedent had sustained some degree of cardiac failure immediately after the 1963 episode. When this was called to his attention, Dr. York stated such temporary episodes are not unusual; "the important thing is that when I saw the man on October 12, 1963, approximately five months after the infarction, he showed no evidence of cardiac failure." He did say, however, that the infarctions left parts of the heart fibrotic, indicating a functional impairment of the heart.

The dilemma in which this court is placed by conflicting medical opinions in appeals such as this has been most understandingly described in the opinion of our Supreme Court in *Dwyer v. Ford Motor Co.*, 36 *N. J.* 487 (1962).

The authorities relied upon by the parties all agree that there must be causal relation between an employment accident and death for survivors to be entitled to the benefits under *N. J. S. A.* 34:15. See *Renner v. R. L. Tool & Die Co.*, 57 *N. J.* 190 (1970); *Walck v. Johns-Manville Products Corp.*, 56 *N. J.* 533 (1970); *Close v. Kordulak Bros.*, 44 *N. J.* 589 (1965); *Dwyer v. Ford Motor Co., supra; Hagerman v. Lewis Lumber Co.*, 13 *N. J.* 315 (1953). Note the collections of authorities in these cases. All of the cited cases except *Renner* involved a workman's death due to heart failure.

Before considering the basic issue of the causal relationship it may be well to define some terms as they may pertain to the issues in this case. Black's Law Dictionary (Rev. 4th ed. 1968) gives the following definitions:

Cause: v. To be the cause or occasion of; to effect as an agent; to bring about; to bring into existence; * * * to induce, to compel. [at 278]

Cause: n. Each separate antecedent of an event. [at 278]

Efficient cause: The working cause; that cause which produces effects or results; an intervening cause, which produces results which would not have come to pass except for its interposition, and for which, therefore, the person who set in motion the original chain of causes is not responsible. [at 605]

Efficient intervening cause: * * * A new and independent force which breaks causal connection between original wrong and injury. [at 605–606]

Condition: * * * Mode or state of being. [at 365]

Effect: n. Result. [at 605]

The medical testimony indicates the following chain of causation that led to the ultimate effect or result, *i. e.* Engelson's death. In the first instance, Engelson had a bad biochemical *condition* — "impossible" by Dr. Lewis' description. This brought on or *induced* his advanced arteriosclerotic *condition*. The occlusionary effect of arteriosclerosis

was due to the progressive hardening and narrowing of the blood vessels which in turn brought on the myocardial infarctions with their attendant necrosis, scar tissue or fibrosis, thereby affecting the efficiency of the heart as a pump. Overexertion, tension or strain superimposed upon the *condition* of Engelson's cardiovascular system impaired as it was by his advanced arteriosclerosis *caused* the 1963 infarction. This in turn *caused* a degree of congestive heart failure in June 1963 while he was in the hospital, although there was no evidence of it in October 1963, according to Dr. York who examined him on October 12, 1963. The infarction healed with some necrotic effect on the heart muscle, which resulted in Engelson, as a man, as a functional unit being deemed 40% impaired by the Division Judge Katzman.

Although his heart condition had stabilized or was operating on a plateau for almost four years, the deterioration of his arteriosclerotic condition continued. His reckless overexertion on April 3, 1967, superimposed on his then deteriorating arteriosclerotic condition, caused a more serious heart attack, with its attendant myocardial infarction and congestive heart failure. This episode made him a cardiac cripple. Immediately following the 1967 attack his cardiovascular condition worsened, and with the heart as a pump left impaired by the 1963 and 1967 infarctions, more infarctions and heart failure episodes led to his death on June 23, 1969.

At what point in this chain of causation is it realistically reasonable to fix the kind of causal relationship to the death contemplated by the policy of the statute and the decisions of our courts? The cases primarily relied upon by respondent employers are readily distinguishable on their facts from the instant case. In *Hagerman, supra,* 13 *N. J.* at 318, the court held that a 1945 cardiac episode was an *inducing* cause of the death irrespective of the passage of time. A direct causal relationship was found between the attack and the death. There was no intervening employment effort present in this case.

Similarly, in *Close, supra,* 44 *N. J.* at 600, there was only one work-connected heart episode from which, it was adjudged, decedent never recovered. Significant in the difference between *Close* and the instant case is the fact that the autopsy in that case showed no other infarction but the first which resulted in congestive heart failure. Again the court found a direct causal relation without an efficient intervening cause.

The essential facts in *Schiffres v. Kittalinny Lodge, Inc.,* 39 *N. J.* 139 (1963), are in many ways similar to those present here: the two major infarctions, the stabilization periods of approximately $3\frac{1}{2}$ years to four years, the arteriosclerotic underlying conditions, the $37\frac{1}{2}\%$ and $40\%$ disabilities after the first infarction, and even the ages of the decedents, both in their forties at the time of the first episode. The only distinction between the two cases is the fact that in *Schiffres* the second heart attack did not arise out of or in the course of his employment. All claims for benefits were made against the employer at the time of decedent's first attack. The court's rationale in *Schiffres* is applicable here. There the award for the first attack under all the prevailing circumstances was held dispositive of all the employer's obligations under the act. Similarly, in this case, Division Judge Levine, in determining Engelson's 100% permanent total disability as a result of the 1967 attack, crediting the 40% disability award for the first episode, dismissed decedent's petition claiming employer Zucker had a continuing obligation because of the alleged causal relationship between the 1963 and 1967 attacks. The compensation judge based his dismissal on the testimony of Dr. Lieb, saying in his decision on March 21, 1968

\* \* \* that the condition of the petitioner had become fixed and stabilized for a considerable period of time following the first infarct. In fact, it was some three and a half years following the infarct — or a little bit longer than that — and only as a result of the new intervening situation, namely, the aggravation of his cardiac condition by the occurrences in April of 1967 while working for Remco,

do we have his condition affected and now translated into obvious total disability.

So it would appear to me — unless I can be persuaded otherwise — that the respondent Zucker is relieved of all obligations in this matter for temporary disability and permanent disability. (T-13)

The same reasoning is applicable with respect to the death benefit claim against Zucker. *Schiffres,* as the later decision of *Close* held, did not bar a death benefit claim solely on the basis of time elapsed between a heart attack and death. *Schiffres* does hold that there must be demonstrable evidence of a causal relationship between the attack and the death. Considering the medical and physical chain of causation, based upon all the doctors' testimony, the testimony as to the compensable accidents of 1963 and 1967, and the legal concepts of causation, I hold that the causal relation required by *Schiffres,* as well as the other cases, is not what the general definition of "cause" encompasses. Within such a definition "each separate antecedent of an event" would include decedent's biochemical condition, his arteriosclerotic condition and the condition of the heart after the infarctions resulting from the employment accidents acting on the poor condition of decedent's blood vessels. It is not the *condition* of the workman that determines the employer's responsibility. It is well settled that an employer takes a worker in the health condition that he hires him. *Dwyer, supra,* 36 *N. J.* at 512. It is the compensable accident defined in *N. J. S. A.* 34:15 that *causes* certain conditions as consequences. As Dr. Lewis testified, one infarction does not *cause* another. Similarly, the death in this case did not result from an infarction but from the congestive heart failure, in itself due to a number of factors, *i. e.,* all the links in the chain of causation forged by the testimony of the medical experts.

Plausible arguments were made by respondent's medical witnesses for the contributory or causal effect of the 1963 episode to the 1969 death as being part of the cumulative effect of all the links in the chain of causation. I find,

however, that from 1963 to 1967 the impaired heart condition was fully compensated by the 40% award, was stabilized for a period of almost four years, and may have permitted decedent to have lived as long as his underlying cardiovascular condition would allow without the intervention of another accident; and that decedent's unheeding overexertion while in Remco's employ in 1967 constituted the efficient intervening cause which produced the heart attack with its immediate consequences of congestive heart failure and the ensuing episodes that resulted in death in 1969. The 40% award for the 1963 episode indicates a substantial functional disability, but this does not necessarily indicate the "appreciable degree" of contribution to the death mentioned in *Dwyer* where, as here, we have an efficient intervening cause with such immediate devastating consequences.

I find for the reasons herein set forth that respondent employers have not sustained the burden of proving that the 1963 episode was causally related to the 1969 death, and that the 1967 accident and its consequences constituted an efficient intervening cause of death for which Zucker is not liable for benefits under the statute. As to the provisions with respect to medical bills and legal fees, the judgment of the Division Judge Prioletta is affirmed.

This matter is remanded to the Division of Workmen's Compensation for a revision of its judgment and entry of an appropriate award in accordance with this opinion.