408 S.E.2d 13

**Corena BRADFORD, Widow of John Bradford, Appellant,**

v.

**WORKERS' COMPENSATION COMMISSIONER and Ranger Fuel Corporation, Appellees.**

No. 20047.

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1991.

Decided July 8, 1991.

Rehearing Denied Sept. 5, 1991.

---

Don M. Stacy, Beckley, for appellant.

William F. Richmond, Jr., Abrams, Byron, Henderson & Richmond, Beckley, for appellee Ranger Fuel Corp.

MILLER, Chief Justice:

This appeal involves a claim for widow's benefits under W.Va.Code, 23–4–10(b) (1978), in which we are asked to address the degree of proof that must be shown to establish that a deceased employee's occupational pneumoconiosis (OP) caused his death. The application of the claimant, Corena Bradford, for widow's benefits was rejected by the Workers' Compensation Commissioner and the Workers' Compensation Appeal Board on the ground that OP was neither the cause of nor a major contributing factor in the death of the claimant's deceased spouse, John Bradford.

Mr. Bradford was employed as a coal miner for twenty-seven years, the last eleven of which he worked for Ranger Fuel Corporation. In December, 1976, he ceased work for medical reasons and filed a claim with the Commissioner for OP benefits. The OP Board found sufficient evidence to justify a diagnosis of OP in the advanced stage with a total pulmonary functional impairment of capacity to work. As a result, the Commissioner granted Mr. Bradford a permanent total disability (PTD) award.

In March of 1983, Mr. Bradford visited John M. Daniel, M.D., complaining of marked difficulty in breathing. Dr. Daniel diagnosed chronic obstructive pulmonary disease, coal worker's pneumoconiosis, and arteriosclerotic heart disease. Dr. Daniel concluded that Mr. Bradford would be a good candidate for a transtracheal oxygen delivery system, and a transtracheal catheter was surgically inserted. These measures apparently succeeded in relieving Mr. Bradford's breathing problems for the next two years.

In January of 1985, however, Mr. Bradford was admitted to the hospital with complaints of increased difficulty in breathing. At that time, x-rays revealed an unusually rounded nodular density in his chest. A CT scan of the chest was suggested, but Mr. Bradford was apparently unable to undergo this procedure because he had difficulty breathing in the supine position. Dr. Daniel diagnosed chronic obstructive pulmonary disease with respiratory failure, pneumoconiosis, and cor pulmonale. Dr. Daniel recommended out-patient evaluation for a possible lung tumor, although he noted that "any therapy that would be performed on this patient for that particular diagnosis would be strickly [sic] palliative."

In June of 1985, Mr. Bradford was hospitalized for further tests by George E. Lovegrove, M.D. X-rays and a CT scan of the chest confirmed the existence of a pulmonary lesion, apparently increasing in size, which Dr. Lovegrove concluded was probably secondary to a reactive lymph node. The CT scan also revealed suspicious liver lesions consistent with metastatic disease. Needle biopsies revealed evidence of fatty infiltration of the liver, but showed no evidence of malignancy. A second CT scan, conducted in August, 1985, revealed no change in the pulmonary lesion, but a marked progression and enlargement of the liver lesions consistent with a rapidly progressive malignant process.

On August 12, 1985, Mr. Bradford was admitted to the hospital for acute upper gastrointestinal bleeding. While hospitalized, Mr. Bradford underwent an open-liver biopsy which revealed the presence of metastatic cancer, the primary site of which was unknown. Shortly thereafter, Mr. Bradford developed acute breathing difficulties and acute superior vena caval syndrome.[1] Mr. Bradford's condition was stabilized somewhat with steroid therapy, but Dr. Lovegrove felt that he would not be a candidate for radiation therapy due to his rapid deterioration. Mr. Bradford was discharged from the hospital with a diagnosis of widely metastatic carcinomatous process primarily involving his lungs and liver. The prognosis was very poor.

On September 3, 1985, Mr. Bradford died at the age of fifty-seven. The death certificate listed metastatic carcinoma as the im-

---

**1.** Superior vena caval syndrome is obstruction of the vein which returns blood from the head and neck, upper limbs, and thorax by cancer or some other type of growth, causing swelling of the blood vessels in the face, neck, and arms and breathing difficulties. *Stedman's Medical Dictionary* 1395, 1542 (5th Unabr. Lawyers' Ed. 1982).

mediate cause of death. Superior vena caval syndrome and chronic obstructive pulmonary disease were listed as "conditions ... which gave rise to" the immediate cause of death.[2] No autopsy was performed.

The claimant subsequently filed an application for death benefits pursuant to W.Va. Code, 23–4–10(b).[3] After issuing a nonmedical ruling in favor of the claimant, the Commissioner referred the claim to the OP Board for evaluation.

In support of her claim, the claimant submitted a letter from Dr. Daniel detailing his treatment of Mr. Bradford. Dr. Daniel stated that at the time the pulmonary lesion was discovered in January 1985, Mr. Bradford was not a candidate for surgery, which Dr. Daniel characterized as "the definative [sic] therapy that is necessary for the treatment of cancer," because of the advanced stage of his pulmonary impairment. Dr. Daniel further stated that if such therapy had been carried out, Mr. Bradford might have survived. As a consequence, Dr. Daniel concluded that the chronic obstructive lung disease and the coal worker's pneumoconiosis were "major contributing factor[s]" in Mr. Bradford's death.

After reviewing the available medical evidence, the OP Board, in a report dated March 24, 1987, concluded that Mr. Bradford's death was not due to OP and that OP was not a major contributing factor in his death. Based on these findings, the

Commissioner, by order dated April 17, 1987, rejected the claim.[4]

The claimant protested this ruling. In a report dated September 12, 1988, Dr. Lovegrove stated that Mr. Bradford's death was due to "a malignant process," most likely lung cancer which spread to the liver. Dr. Lovegrove was of the opinion that Mr. Bradford would have died from the rapidly progressive liver cancer regardless of any other impairment. Dr. Lovegrove also concluded, however, that Mr. Bradford's death was "markedly hastened" by his severe pulmonary impairment.

The claimant also submitted a report dated April 4, 1988, from D. L. Rasmussen, M.D. Although Dr. Rasmussen had not examined Mr. Bradford for a number of years prior to his death, he offered several conclusions concerning Mr. Bradford's death based on his review of the medical records supplied by the claimant. Dr. Rasmussen agreed that Mr. Bradford's death was due primarily to cancer, but found it "medically reasonable" to conclude that death was hastened by the severe pulmonary impairment. Accordingly, Dr. Rasmussen found it reasonable to conclude that OP was a contributing factor in accelerating Mr. Bradford's death from cancer.

At a hearing conducted on April 26, 1989, members of the OP Board testified with respect to their findings and conclusions. James H. Walker, M.D., testified that after reviewing the medical evidence, he concluded that the immediate cause of death was

---

**2.** Peptic ulcer disease was listed as a condition "contributing to death but not related to" the immediate cause of death.

**3.** W.Va.Code, 23–4–10(b), provides, in pertinent part:

"In case a personal injury, other than occupational pneumoconiosis or other occupational disease, suffered by an employee in the course of and resulting from his employment, causes death, and disability is continuous from date of such injury until date of death, or if death results from occupational pneumoconiosis or from any other occupational disease, the benefits shall be in the amounts and to the persons as follows:

* * * * * *

"(b) If there be dependents as defined in subdivision (d) of this section, such depend-

ents shall be paid for as long as their dependency shall continue in the same amount as was paid or would have been paid the deceased employee for total disability had he lived. The order of preference of payment and length of dependence shall be as follows:

"(1) A dependent widow or widower until death or remarriage of such widow or widower[.]"

**4.** The Commissioner did grant the claimant an award of benefits pursuant to W.Va.Code, 23–4–10(e) (1978), which authorizes a lump-sum payment of 104 weeks of death benefits "[i]f a person receiving [PTD] benefits dies from a cause other than a disabling injury[.]" We discussed the difference between an award under this section and death benefits awarded under W.Va.Code, 23–4–10(b), in *Vandergriff v. Workers' Compensation Commissioner, supra.*

probably liver cancer, although it was unclear whether the primary site of the malignancy was the lungs or the liver. Dr. Walker recognized the severity of Mr. Bradford's pulmonary impairment due to OP, which he believed made it more difficult to establish the diagnosis of cancer and precluded surgery as a treatment. Dr. Walker also stated, however, that because the cancer was progressing so rapidly and had spread, Mr. Bradford could not have been successfully treated even if he had had normal pulmonary function. For this reason, Dr. Walker concluded that OP had played no part in Mr. Bradford's death. William Revercomb, M.D., agreed that Mr. Bradford's cancer could not have been successfully treated through surgery and that Mr. Bradford would have died of cancer even if he had had no pulmonary impairment. Consequently, Dr. Revercomb also concluded that OP did not contribute to Mr. Bradford's death.

By order dated June 7, 1989, the Commissioner affirmed the prior order rejecting the claim. The claimant appealed to the Appeal Board, which, by order dated October 18, 1990, affirmed the Commissioner's ruling. In essence, the Appeal Board concluded that because Mr. Bradford would have died from the cancer even if he had had no pulmonary impairment, OP was not a major contributing factor in his death. It is from this order that the claimant now appeals.

In this appeal, the only question is whether there was a sufficient causal connection between Mr. Bradford's admittedly work-related pulmonary impairment and his death to entitle the claimant to death benefits under W.Va.Code, 23–4–10(b). The employer contends that our workers' compensation law does not authorize a dependent to receive death benefits upon a showing that OP was merely a factor contributing to the death of the employee.

W.Va.Code, 23–4–1 (1976), provides that benefits "shall not be payable for the disease of [OP], *or death resulting therefrom*" unless the employee is shown to have met the statutory exposure requirements.[5] (Emphasis added). W.Va.Code, 23–4–6a (1978), allows death benefits "[i]f the employee *dies from* [OP]."[6] (Emphasis added). W.Va.Code, 23–4–10, provides for the payment of death benefits to dependents "if death *results from* [OP]."[7] (Emphasis added). The employer argues that these statutes anticipate payment of death benefits only where OP is the sole or, at least, the primary cause of death.

■ We begin by observing that the statutory language of the widow's death benefits provision, W.Va.Code, 23–4–10(b), requires only that the employee's death "result" from a compensable injury or disease. There is no limiting language requiring the occupational injury or disease to be the "sole cause" or "major contributing cause" of death.

Neither have our cases placed such a restrictive interpretation on the statute. In *Keller v. State Workmen's Compensation Commissioner*, 156 W.Va. 760, 197 S.E.2d 306 (1973), the employee suffered a work-related back injury. Shortly thereafter, he was found to have cancer which resulted in his death some four months later. Several doctors expressed the opinion that the work-related injury aggravated the cancer-

---

**5.** W.Va.Code, 23–4–1 (1976), stated, in pertinent part:

"[C]ompensation shall not be payable for the disease of [OP], or death resulting therefrom, unless the employee has been exposed to the hazards of [OP] in the State of West Virginia over a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure to such hazards, or for any five of the fifteen years immediately preceding the date of such last exposure."

As the statute in effect at the time of Mr. Bradford's death, this provision controls the claim in this case. *See Charles v. State Workmen's Com-*

*pensation Comm'r*, 161 W.Va. 285, 241 S.E.2d 816 (1978); *Sizemore v. State Workmen's Compensation Comm'r*, 159 W.Va. 100, 219 S.E.2d 912 (1975). The subsequent amendments to the statute did not alter this provision. *See* 1989 W.Va. Acts ch. 208.

**6.** W.Va.Code, 23–4–6a, provides, in pertinent part: "If the employee dies from [OP], the benefits shall be as provided for in section ten [§ 23–4–10] of this article[.]"

**7.** For the relevant text of W.Va.Code, 23–4–10, see note 3, *supra*.

ous condition, hastening death. Although the employee's cancer was not work related, we concluded that his widow was entitled to benefits pursuant to W.Va.Code, 23–4–10(b), stating in Syllabus Points 1 and 2:

"1. Where the evidence in a workmen's compensation case discloses that a decedent incurred a compensable injury which aggravated a pre-existing malignancy and accelerated death, the claimant's claim for dependent benefits is compensable although the pre-existing malignancy would have eventually caused death without the injury.

"2. A claimant in a workmen's compensation death case must bear the burden of proving his claim but in doing so it is not necessary to prove to the exclusion of all else the causal connection between the injury and the death, it being sufficient to show that the injury aggravated a pre-existing condition and accelerated death."

■ In *Keller*, we reviewed our earlier cases and summarized the type of nexus that must be shown between the employment injury and the subsequent death:

"It is, of course, fundamental that where there is a causal connection between an injury received by an employee in the course of and resulting from his employment and his death, the claim for compensation by the widow is compensable. *Evans v. State Compensation Director*, 150 W.Va. 161, 144 S.E.2d 663 [ (1965) ]; *Vankirk v. State Compensation Commissioner*, 144 W.Va. 447, 108 S.E.2d 567 [ (1959) ]." 156 W.Va. at 762, 197 S.E.2d at 308.

This language was taken almost verbatim from Syllabus Point 3 of *Evans v. State Compensation Director*, 150 W.Va. 161, 144 S.E.2d 663 (1965), *overruled on other grounds, Brogan v. Workers' Compensation Commissioner*, 174 W.Va. 517, 327 S.E.2d 694 (1984), where we held:

"Where there is a causal connection between an injury received by an employee in the course of and resulting from his employment and his death, a claim for compensation by the widow of the deceased employee is compensable."

The facts of *Evans* are instructive. The employee fell at work and sustained a severe bruise to the left side of his back just above the waist. When the pain persisted, he sought medical advice. The employee was subsequently diagnosed as having nephrosis syndrome and was treated with heavy doses of cortisone. He later developed pneumonia and a staph infection and died. An autopsy revealed that the employee's nephrosis was due to a renal thrombosis which could have been caused by the work-related back injury. The evidence also showed that the cortisone used to treat the nephrosis had made the employee immune to the antibiotics used to treat pneumonia and staph infection which ultimately resulted in his death. We found the death to be causally related, stating that

"the injury led to a thrombosed renal vein which in turn caused nephrosis, and ... the death of claimant's decedent was caused by a complication of both the nephrosis and its treatment. It has been held that where death ensues because an injury is responsible for a lack of resistance to an infection, the causal connection can be traced directly to the injury. *Lockhart, etc. v. State Compensation Commissioner, et al.*, 115 W.Va. 144, 174 S.E. 780 [ (1934) ]." 150 W.Va. at 168, 144 S.E.2d at 668.

In *Keller*, the Court also pointed out that its rule as to causal relation of the injury to the death was consistent with the more general rule enunciated in Syllabus Point 2 of *Sowder v. State Workmen's Compensation Commissioner*, 155 W.Va. 889, 189 S.E.2d 674 (1972):

"A claimant in a workmen's compensation case must bear the burden of proving his claim but in doing so it is not necessary to prove to the exclusion of all else the causal connection between the injury and the employment."

*See also Myers v. State Workmen's Compensation Comm'r*, 160 W.Va. 766, 239 S.E.2d 124 (1977).

In *Lockhart v. State Compensation Commissioner*, 115 W.Va. 144, 174 S.E. 780 (1934), we had previously held that a

widow was entitled to death benefits even though the primary cause of her husband's death was a noncompensable ankle infection. The decedent had suffered from paint poisoning in the course of and as a result of his employment in a paint factory. As a consequence, he was in a weakened condition which caused him to succumb to the ankle infection. We established this rule in Syllabus Point 2 of *Lockhart:*

"Where death is shown to be due to a weakened and debilitated condition brought about by a compensable injury, but for which death would not have occurred at the time, such death is compensable." [8]

The same principles have been applied in other jurisdictions which have death benefit statutes similar to ours. The Ohio Supreme Court in *Oswald v. Connor*, 16 Ohio St.3d 38, 16 O.B.R. 520, 476 N.E.2d 658 (1985), upheld an award of death benefits to the widow of an employee who died of a heart attack. The claimant asserted that the heart attack was caused by the decedent's depression and worry over having contracted avian tuberculosis, an apparently incurable disease, while working around birds at the Cincinnati Zoo. While there was no medical evidence that the avian tuberculosis directly caused the heart attack, the disease did create the decedent's negative psychosomatic attitude which brought on the heart attack.[9] In finding the claim compensable, the court stated this rule in its single Syllabus Point:

"Under the Workers' Compensation Act, death from a pre-existing cause and accelerated by an occupational disease contracted in the course of and arising out of the scope of employment, is compensable where the death is accelerated by a substantial period of time as a direct

and proximate result of the occupational disease. (*McKee v. Electric Auto–Lite Co.* [1958], 168 Ohio St. 77 [5 O.O.2d 345, 151 N.E.2d 540], approved and extended.)"

*See also Revles v. Industrial Comm'n*, 88 Ariz. 67, 74, 352 P.2d 759, 763 (1960) ("[A]n industrial injury need not be the *sole* cause of death, in order to entitle decedent's dependents to death benefits, as long as it appears that the injury contributed to and accelerated the inevitable."); *Johnson v. Industrial Comm'n*, 148 Colo. 561, 564, 366 P.2d 864, 865 (1961) ("It is not necessary that the injury be the immediate cause, but only the proximate cause of the death in order to sustain an award."); *Sears, Roebuck & Co. v. Industrial Comm'n*, 79 Ill.2d 59, 66, 37 Ill.Dec. 341, 345, 402 N.E.2d 231, 235 (1980) ("The death is compensable under the Act if the decedent's employment was a causative factor, and the employment need not be the sole causative factor or even the principal causative factor."); Syllabus Point 1, in part, *Drake v. State Dep't of Social Welfare*, 210 Kan. 197, 499 P.2d 532 (1972) ("[T]he injury the deceased workman sustained was instrumental in part and was a contributing cause of his death."); *Gerhardt v. Welch*, 267 Minn. 206, 210, 125 N.W.2d 721, 724 (1964) ("The burden rests on petitioner to establish by a fair preponderance of the evidence the causal connection between the compensable injury and the subsequent death."); *Stamatis v. Bechtel Power Corp.*, 184 Mont. 64, 69, 601 P.2d 403, 406 (1979) ("[W]hether decedent suffered a compensable injury under the Workers' Compensation Act [is a] question [that] has two facets: (1) Did decedent suffer an injury as defined by the Act? (2) Was such

---

8. In *Johnson v. State Workmen's Compensation Commissioner*, 155 W.Va. 624, 186 S.E.2d 771 (1972), the Court was faced with the issue of whether there was a causal connection between the decedent's OP and his death as a result of heart disease. We declined to express a rule and did not cite any of our earlier cases. We resolved the issue in favor of the decedent's widow by applying the liberality rule.

9. The court's findings in *Connor* on this point were:

"[T]his court finds that the trial court's determination—that the combined result of the pre-existing disease [coronary artery disease], the occupational disease and Oswald's negative psychosomatic reactions directly and proximately caused his death at a substantially earlier time than would have been the case without the occupational disease—is supported by the record." 16 Ohio St.3d at 44, 16 O.B.R. at 525, 476 N.E.2d at 664.

injury causally related to decedent's death?"); *Engelson v. J. F. Zucker Co.*, 119 N.J.Super. 62, 67, 290 A.2d 155, 157–58 (1972) ("[T]here must be causal relation between an employment accident and death for survivors to be entitled to benefits under *N.J.S.A.* 34:15."); *Self v. Starr–Davis Co.*, 13 N.C.App. 694, 699, 187 S.E.2d 466, 469–70 (1972) ("[I]njuries arising out of and in the course of employment which only accelerate and contribute to death caused primarily from non-related physical conditions nevertheless are compensable under the Workmen's Compensation Act."); *Lorick v. South Carolina Elec. & Gas Co.*, 245 S.C. 513, 518, 141 S.E.2d 662, 664 (1965) ("The death must be proximately caused by an accident that arose out of the employment[.]"); *Huey Bros. Lumber Co. v. Kirk*, 210 Tenn. (14 McCanless) 170, 173, 357 S.W.2d 50, 52 (1962) ("If the employment hastened the employee's death to any degree, his widow is entitled to recover."); *United States Fire Ins. Co. v. Rearden*, 695 S.W.2d 758, 760 (Tex.App.1985) ("Workers' Compensation Death Benefits are recoverable regardless of the interim time between the accidental injury and death if there is shown a causal relation between the injury and death in that the injury was a concurring, contributing or producing cause of the death."); *Towne v. Department of Labor & Indus.*, 51 Wash.2d 644, 647, 320 P.2d 1094, 1096 (1958) ("The test is not whether the injury occasioned by the workman's exertion in the course of his employment was the sole cause of his death, but whether it contributed in any material degree.").

We are not aware of any court that has held that there must be proof that an occupational injury or disease was the sole proximate cause of or a substantial contributing factor in death in order for a deceased employee's dependent's to receive death benefits. Pennsylvania appears to have the most restrictive rule. In *Kusenko v. Republic Steel Corp.*, 506 Pa. 104, 106–107, 484 A.2d 374, 376 (1984), the Supreme Court of Pennsylvania adopted the following rule, first stated in its earlier plurality opinion of *McCloskey v. Workmen's Compensation Appeal Board*, 501 Pa. 93, 101, 460 A.2d 237, 241 (1983):

" 'Where there are multiple causes of death and the immediate cause was noncompensable, the requirements of [the workers' compensation statute] may be met by a showing with unequivocal medical evidence that the deceased suffered from an occupational disease and that it was a substantial, contributing factor among the secondary causes in bringing about death.' " [10]

Even under the Pennsylvania rule, the substantial contributing factor need not be related to the primary cause of death, but only to a secondary cause of death.

Consistent with our *Evans* case, *supra*, a number of jurisdictions have concluded that where a preexisting occupational injury or disease prevents lifesaving or life prolonging treatment of a subsequent independent disease, dependents of the deceased employee should be able to collect death benefits.[11] *See American Smelting & Refining Co. v. Industrial Comm'n*, 25 Ariz. App. 532, 544 P.2d 1133 (1976); *Murray v. Direen Operating Co.*, 15 A.D.2d 851, 224 N.Y.S.2d 571, *appeal denied*, 11 N.Y.2d 644, 228 N.Y.S.2d 1026, 182 N.E.2d 620 (1962); *City of Scranton v. Workmen's Compensation Appeal Bd.*, 131 Pa. Cmwlth. 119, 569 A.2d 990 (1990). *See generally* 1 *Larson's Workmen's Compensation Law* § 13.11(b) (1990).

■ Not only do our own cases demonstrate, but those in other jurisdictions, which have general death benefit statutes, are in accord with the proposition that the

---

**10.** The Pennsylvania workers' compensation act provides that occupational disease may be the basis for an award of compensation for the "disability or death of an employe which results *in whole or in part* from the employe's exposure to the hazard of occupational disease[.]" 77 Pa.Stat.Ann. § 411(2) (1974). (Emphasis added).

**11.** It has also been stated that "when the compensable injury produces a condition that interferes with normal curative processes that might have alleviated the preexisting independent condition, the progression of the independent condition is compensable...." (Footnotes omitted). 1 *Larson's Workmen's Compensation Law* § 13.11(b) at 3–530, 3–532 (1990).

industrial injury or disease need not be the sole or major contributing cause of the death. In Syllabus Point 1 of *Vandergriff v. Workers' Compensation Commissioner*, 183 W.Va. 148, 394 S.E.2d 747 (1990), we recently summarized the statutory requirements for dependent's death benefits:

"To obtain benefits under W.Va.Code, 23–4–10(b) (1978), a dependent is required to satisfy the following conditions: First, the deceased employee must have suffered a compensable personal injury or contracted occupational pneumoconiosis or another occupational disease. Second, this injury or disease must have caused the employee's death. Third, if death was due to injury, the disability must have been continuous from the date such injury occurred until the date of death."

From the foregoing, we find that the appropriate test under W.Va.Code, 23–4–10(b) (1978), is not whether the employee's death was the result of the occupational injury or disease exclusively, but whether the injury or disease contributed in any material degree to the death.

As earlier noted, there can be little question as to the severity of Mr. Bradford's OP. In 1976, he was found to have OP in an advanced stage with a total pulmonary functional impairment of capacity to work and was given a PTD award. In March of 1983, he had severe difficulty in breathing, and, as a result of his pulmonary impairment, he was given a transtracheal catheter to provide an oxygen delivery system.

By 1985, he was diagnosed as having lung cancer, but, according to his treating physician, Dr. Daniel, his pulmonary condition resulting from OP was so severe that there was no possibility of operating to remove the cancer. Dr. Daniel was of the opinion that the OP was a major contributing factor in Mr. Bradford's death even though the actual cause of death was metastasis of the cancer to the liver.

Dr. Rasmussen offered an opinion that "[i]t would ... seem medically reasonable to conclude" that Mr. Bradford's death was hastened by the OP, that "[a] respiratory death cannot be excluded ... and, in fact, seems reasonable," and that it was "reasonable medically to conclude" that OP was a major contributing factor in Mr. Bradford's death. Dr. Lovegrove stated quite emphatically that he believed Mr. Bradford's death was "markedly hastened" by the pulmonary impairment. This conclusion was not challenged by any competent medical evidence. Moreover, Dr. Walker recognized that the severity of the pulmonary impairment made it more difficult for the doctors to diagnose the cancer.

Viewing this evidence in light of our law, we conclude that both the Commissioner and the Appeal Board were clearly wrong in holding that widow's benefits were not available. As a consequence, we reverse the order of the Appeal Board and the Commissioner.

Reversed.