## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**JOYCE WILSON,**
**WIDOW OF JERRY WILSON,**
**Claimant Below, Petitioner**

**FILED**

February 3, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)　No. 16-0234**　(BOR Appeal No. 2050543)
　　　　　　　　　　　(Claim No. 950054218)

**ISLAND CREEK COAL COMPANY,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Joyce Wilson, widow of Jerry Wilson, by Robert Stultz, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Island Creek Coal Company, by Ann Rembrandt, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated February 9, 2016, in which the Board affirmed a May 22, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's February 26, 2013, decision denying Ms. Wilson's request for an award of dependent's benefits. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Wilson filed a claim for dependent's benefits following the death of her husband, Jerry, who was employed as an underground coal miner. Prior to his death, the decedent received

1

extensive treatment, and underwent several evaluations, for numerous respiratory problems.[1] On June 11, 2001, D.L. Rasmussen, M.D., evaluated the decedent and diagnosed him with occupationally-acquired chronic lung disease arising from exposure to occupational dust hazards and cigarette smoke.[2] Additionally, Ronald Mudry Jr., M.D., the decedent's primary care physician, initially diagnosed him with occupational pneumoconiosis and chronic obstructive pulmonary disease.

However, during the year preceding the decedent's death, Dr. Mudry diagnosed him with multiple nodular densities and infiltrative changes that were progressively worsening. In the months leading up to his death, the decedent was hospitalized after presenting to Garrett County Memorial Hospital's emergency department in severe respiratory distress. Sputum cultures obtained while the decedent was hospitalized revealed evidence of a mycobacterium species infection. Additionally, a chest CT scan which was performed while the decedent was hospitalized revealed worsening bilateral opacities with large cavitary regions, an infiltrative area of the left lung, chronic obstructive pulmonary disease, and emphysema. It was determined that the overall condition of the decedent's lungs was consistent with a chronic inflammatory or infectious process, such as pneumonia. Following his discharge from the hospital in March of 2012, the decedent continued to seek treatment with Dr. Mudry until his death. The decedent died on July 2, 2012, and his death certificate, which was completed by Dr. Mudry, listed his cause of death as occupational pneumoconiosis.

On January 17, 2013, the Occupational Pneumoconiosis Board concluded that occupational pneumoconiosis did not materially contribute to the decedent's death. The Occupational Pneumoconiosis Board reviewed multiple radiographs and found that the diagnostic imaging available reveals moderately severe emphysema, as well as evidence of inflammatory or post-inflammatory disease. Additionally, the Occupational Pneumoconiosis Board noted that it previously examined the decedent and determined that he had 40% whole person impairment as a result of his respiratory problems.[3] However, it concluded that the evidence available for review fails to demonstrate the presence of sufficient pleural or parenchymal disease to suggest a diagnosis of occupational pneumoconiosis. On February 26, 2013, the claims administrator denied Ms. Wilson's request for an award of dependent's benefits based upon a finding that occupational pneumoconiosis did not materially contribute to the decedent's death.

On October 3, 2013, Dr. Mudry authored a letter in which he indicated that he treated the decedent from June 2, 2009, until his death. He opined that the decedent had severe occupational pneumoconiosis with progressive massive fibrosis that played a material role in his death.

---

[1] It appears that the decedent received a permanent partial disability award, and possibly a permanent total disability award, for occupational pneumoconiosis during his lifetime. However, the record does not contain any documentation relating to this award.

[2] The Office of Judges erroneously listed the date of Dr. Rasmussen's evaluation as June 11, 2011.

[3] The Occupational Pneumoconiosis Board does not indicate what percentage of the decedent's impairment was attributable to occupational pneumoconiosis.

Specifically, Dr. Mudry indicated that he based his opinion on diagnostic imaging and his diagnosis of severe obstructive lung disease.

On January 7, 2015, Gregory Fino, M.D., performed a records review. Dr. Fino noted that he previously performed a records review which was memorialized in a report dated August 30, 2000. He further noted that in his August 30, 2000, report, he concluded that the decedent's lung deterioration was not related to occupational pneumoconiosis and any impairment above 40% whole person impairment arose from asthma and chronic obstructive pulmonary disease. Dr. Fino opined that during his current records review, he observed the presence of bullous emphysema on chest x-rays and CT scans which was unrelated to occupational pneumoconiosis. He also noted that the decedent developed a lung infection prior to his death. Dr. Fino then opined that although the decedent suffered from very severe lung disease, he did not have occupational pneumoconiosis. Finally, he concluded that occupational pneumoconiosis did not materially contribute to the decedent's death, and opined that the decedent would have died at the time he did and in the same manner regardless of his occupation.

On May 6, 2015, the members of the Occupational Pneumoconiosis Board testified in a hearing before the Office of Judges. The members of the Board testified that the radiographic evidence of record indicates the presence of emphysema but contains insufficient evidence of parenchymal or pleural disease sufficient to make a diagnosis of occupational pneumoconiosis. Finally, the members of the Occupational Pneumoconiosis Board testified that the decedent's death is solely attributable to a mycobacterium species infection and severe chronic obstructive pulmonary disease.

In its Order affirming the February 26, 2013, claims administrator's decision, the Office of Judges held that occupational pneumoconiosis did not materially contribute to the decedent's death. The Board of Review affirmed the reasoning and conclusions of the Office of Judges in its decision dated February 9, 2016. On appeal, Ms. Wilson asserts that the evidence of record demonstrates that occupational pneumoconiosis materially contributed to the death of her husband.

In *Bradford v. Workers' Compensation Comm'r*, Syl. Pt. 3, 185 W.Va. 434, 408 S.E.2d 13 (1991), this Court held that in order to establish entitlement to dependent's benefits, a claimant must show that an occupational disease or injury "contributed in any material degree to the death." The Office of Judges took note of the Occupational Pneumoconiosis Board's determination that occupational pneumoconiosis did not materially contribute to the decedent's death. Further, the Office of Judges took note of the Occupational Pneumoconiosis Board's finding that the radiographic evidence of record contains insufficient evidence of pleural or parenchymal changes to suggest a diagnosis of occupational pneumoconiosis. Additionally, the Office of Judges took note of the Occupational Pneumoconiosis Board's conclusion that the decedent's death is attributable solely to a mycobacterium infection and chronic obstructive pulmonary disease. The Office of Judges also took note of Dr. Fino's conclusion that occupational pneumoconiosis did not materially contribute to the decedent's death. The Office of Judges then found that the decedent died as a result of a non-compensable infection and, therefore, concluded that occupational pneumoconiosis did not materially contribute to the

decedent's death. We agree with the reasoning and conclusions of the Office of Judges, as affirmed by the Board of Review.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 3, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Margaret L. Workman
Justice Menis E. Ketchum

4