IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**EMMA HARRIS, DEPENDENT OF CARL L. HARRIS (DECEASED),**
**Claimant Below, Petitioner**

**vs.) No. 23-ICA-188**    (JCN: 2020019743)

**PINE RIDGE COAL COMPANY, LLC,**
**Employer Below, Respondent**

**and**

**INSURANCE COMMISSIONER OF WEST VIRGINIA,**
**in its capacity as the administrator of The Self-Insured Security Risk Pool,**
**Respondent**

**FILED**
**September 5, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Emma Harris, dependent of Carl L. Harris (deceased), appeals the April 14, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Pine Ridge Coal Company, LLC, did not file a response. Respondent Insurance Commissioner of West Virginia ("Insurance Commissioner") in its capacity as the administrator of The Self-Insured Guaranty Risk Pool filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's Order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to his death, Mr. Harris filed several claims seeking workers' compensation benefits based upon a diagnosis of occupational pneumoconiosis ("OP"). These claims, spanning from 1985 to 2002, resulted in permanent partial disability ("PPD") awards totaling 30% PPD. Also prior to his death, Mr. Harris was diagnosed with several other health conditions, including chronic obstructive pulmonary disease ("COPD"),

---

[1] Emma Harris is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Insurance Commissioner is represented by James W. Heslep, Esq.

atherosclerotic heart disease, diabetes, acidosis, hypertension, pulmonary hypertension, chronic kidney disease, dehydration, trouble swallowing, and memory loss/dementia.

On December 7, 2019, Mr. Harris died. His death certificate listed COPD as the immediate cause of death. Ms. Harris signed an Application for Fatal Dependents' Benefits on January 7, 2020. By order dated April 28, 2020, the claim administrator approved the claim on a non-medical basis. However, on April 22, 2021, the Occupational Pneumoconiosis Board ("OP Board") issued its findings that OP was not a material contributing factor in Mr. Harris' death. The OP Board noted that there were no radiographs available for interpretation, nor had an autopsy been performed. Based on the OP Board's findings, the claim administrator denied the claim on June 14, 2021. Ms. Harris protested.

Several medical records were submitted into evidence during the underlying litigation. A record from Raleigh General Hospital dated April 5, 2011, indicated that Mr. Harris had undergone a CT scan, which revealed aeration of the lungs, mild atelectasis in the upper left lobe and lingula, and mild coal worker's pneumoconiosis. A record from Raleigh General Hospital dated October 7, 2014, indicated that Mr. Harris had a fifty-year history of smoking a pack of cigarettes daily and a twenty-seven-year history of working in coal mines. The medical record further noted that the impression from the CT scan was emphysema and pulmonary fibrosis, calcified hilar and mediastinal lymph nodes, and coronary artery disease.

Also submitted was a letter from Charles Porterfield, D.O., who stated Mr. Harris did not die solely from coal workers' pneumoconiosis. Dr. Porterfield noted, however, that Mr. Harris had pneumonia and COPD and that it is well known that COPD makes pneumonia more difficult to treat. Dr. Porterfield opined that, by association, coal workers' pneumoconiosis would have played a factor in Mr. Harris' eventual death.

On October 25, 2022, Danielle M. Seaman, M.D., a board-certified radiologist/B-Reader, read a CT scan from May of 2019 and found no evidence consistent with pneumoconiosis. According to Dr. Seaman, the CT scan revealed acute infection or scarring from prior infection, atelectasis, or aspiration. Dr. Seaman noted that a CT scan would be more sensitive than a chest x-ray when confirming or refuting the presence of pneumoconiosis.

On February 1, 2023, the OP Board held a hearing on the matter. In describing his review of the May 2019 CT scan, Johnsey Leef, M.D., testified

> the stuff going on in the right lower lobe looks more like atelectasis and/or pneumonia. The right upper lobe is more nonspecific as far as that goes; when I see a cavitary lesion such as this in a patient with . . . all the other findings,

2

I think of an infectious disease process . . . . Again, not pathognomonic for occupational pneumoconiosis.

Jack Kinder, M.D., testified that he agreed with Dr. Leef's interpretation. Dr. Kinder testified that OP did not play a material role in Mr. Harris' death. According to Dr. Kinder, medical evidence chronicled after Mr. Harris' initial OP diagnosis and resulting PPD award demonstrated that Mr. Harris had multiple medical conditions, including COPD, atherosclerotic heart disease, diabetes, chronic kidney disease, to name a few. In looking at the more recent evidence, Dr. Kinder opined that the CT scans, which were better than x-rays in confirming pneumoconiosis, did not show any signs of OP. Rather, they showed infectious processes. Dr. Kinder concluded that Mr. Harris died of multiple medical problems and that he could not conclude that Mr. Harris had OP. Moreover, Dr. Kinder testified that, even if Mr. Harris did have some mild OP, it would not have played a material contributing factor in his death given the overwhelming other disease processes he was experiencing. Bradley Henry, M.D., concurred with the testimony of Drs. Leef and Kinder.

By order dated April 14, 2023, the Board affirmed the claim administrator's order, which denied the claim for dependents' benefits. In reaching its conclusion, the Board explained the OP Board's findings, as set forth more fully above, and found that the OP Board was not clearly wrong in concluding that OP did not play a material contributing role in Mr. Harris' death. Ms. Harris now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, __, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Ms. Harris argues that the Board erred in affirming the claim administrator's order, which rejected her claim for dependents' benefits. According to Ms. Harris, Mr. Harris had been diagnosed with OP dating back to 2010 and Dr. Porterfield had consistently included that diagnosis in Mr. Harris' medical records. Ms. Harris argues that it was clearly established that Mr. Harris had a long history of employment as a coal miner, suffered from breathing issues and other chronic conditions, and had been awarded a 30% PPD award due to his OP diagnosis. Further, Dr. Patel found chronic parenchymal lung changes due to progressive massive fibrosis secondary to complicated pneumoconiosis, and the Board admitted that OP had been evidenced in previously reviewed x-rays. Ms. Harris argues that, in spite of all this evidence, the OP Board found that Mr. Harris died from COPD and other medical issues. Ms. Harris notes that, while Mr. Harris had many complicated health issues, Dr. Porterfield opined that OP was a factor in Mr. Harris' death. Lastly, Ms. Harris notes that she was entitled to the presumption under West Virginia Code § 23-4-8c(b) (2009)[2] or that, alternatively, the matter should have been resolved in her favor pursuant to West Virginia Code § 23-4-1g (2003).[3]

Upon our review, we find that Ms. Harris' arguments are without merit. The standard for granting dependent's benefits "is not whether the employee's death was the result of the occupational injury or disease exclusively, but whether the injury or disease contributed in any material degree to the death." Syl. Pt. 3, in part, *Bradford v. Workers' Comp. Comm'r*, 185 W. Va. 434, 408 S.E.2d 13 (1991). Pursuant to West Virginia Code § 23-4-6a (2005), if the OP Board's decision is not found to be "clearly wrong in view of the reliable, probative, and substantial evidence on the whole record," then it must be affirmed.

Here, the OP Board concluded that, based on the evidence, OP did not contribute in any material degree to Mr. Harris' death. Dr. Leef opined that the CT scan from May of 2019 and November of 2019 did not reveal any pathological features consistent with OP

---

[2] Pursuant to West Virginia Code § 23-4-8c(b),

> If it can be shown that the . . . deceased employee has been exposed to the hazard of inhaling minute particles of dust in the course of and resulting from his or her employment for a period of ten years during the fifteen years immediately preceding the date of his or her last exposure to such hazard and that the . . . deceased employee has sustained a chronic respiratory disability, it shall be presumed that . . . the deceased employee was suffering at the time of his or her death from occupational pneumoconiosis which arose out of and in the course of his or her employment. This presumption is not conclusive.

[3] Pursuant to West Virginia Code § 23-4-1g, in part, "[i]f, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted."

and rather, demonstrated an "infectious process," which was consistent with Dr. Seaman's interpretation as well. Dr. Kinder agreed with Dr. Leef's assessment and noted that Mr. Harris had multiple medical problems including COPD, atherosclerotic heart disease, acute respiratory failure on top of chronic respiratory failure, and chronic kidney disease, among other conditions. Dr. Kinder opined that Mr. Harris's death was attributable to these many medical problems, pointing out that no autopsy had been performed. According to Dr. Kinder, even if Mr. Harris had mild OP, it could not be stated with great surety that it was a material contributing factor in his death given his other significant medical problems. Dr. Henry also concurred with these findings.

While Ms. Harris argues that Mr. Harris had previously been diagnosed with OP and received a PPD award for the same, the OP Board explained that Mr. Harris' prior diagnosis was based upon x-rays. In the instant claim, the OP Board had the opportunity to view several CT scans, along with additional medical evidence and reports from different physicians, which placed them in a better position to determine whether Mr. Harris had OP. Given all the new evidence, Dr. Kinder opined that Mr. Harris did not have OP as previously suspected. Further, though Dr. Patel interpreted the scans as revealing OP, Dr. Leef stated he disagreed with Dr. Patel's interpretation and explained that the pathology described by Dr. Patel was "an abnormality that can mask other abnormalities. I can see where someone might consider that, given the patient's history, but I don't see evidence of [OP] on this case." Moreover, though Dr. Porterfield stated OP was a factor in Mr. Harris' death, he did not provide any opinion as to whether it materially contributed to his death in any way.

Lastly, though Ms. Harris argues she is entitled to the presumption under West Virginia Code § 23-4-8c(b), we note that the presumption is not conclusive and further find that the OP Board's findings sufficiently rebut any presumption that Mr. Harris was suffering from OP at the time of his death. To the extent Ms. Harris argues that she is entitled to have the matter resolved in her favor pursuant to West Virginia Code § 23-4-1g, we note that the Board never found that the various reports of the physicians in this matter were of equal evidentiary value. Therefore, Ms. Harris is not entitled to have the manner resolved in her favor.

Given this evidence, we cannot find that the Board committed clear error in adopting the OP Board's findings that OP did not materially contribute to Mr. Harris' death, especially considering the significant medical conditions he had at the time of his death. Ms. Harris is entitled to no relief in this regard. Accordingly, we affirm the Board's April 14, 2023, order.

Affirmed.

**ISSUED:** September 5, 2023

5

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

Judge Thomas E. Scarr, not participating.