OSWALD, APPELLANT, *v.* CONNOR, ADMR., BUREAU OF WORKERS'
COMPENSATION, ET AL., APPELLEES.

[Cite as Oswald *v.* Connor (1985), 16 Ohio St. 3d 38.]

(No. 84-681—Decided April 17, 1985.)

*Bettman & Donenfeld* and *Ms. Marianna Brown Bettman,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Gregory M. Nolan,* for appellee Administrator.

*Messrs. Porter, Wright, Morris & Arthur* and *Mr. Paul Berninger,* for appellee Zoological Society of Cincinnati.

DOUGLAS, J. The single issue presented is whether there is sufficient evidence in the record to support the trial court's determination that Vernon Oswald's death from a myocardial infarction was accelerated by a substantial period of time as a direct and proximate result of the effect of his occupational disease, avian tuberculosis, on his pre-existing coronary artery disease. After a careful review of the record, this court finds that there is sufficient evidence in this record which would warrant a finding by the trier of fact that Oswald's occupational disease was the proximate cause of the acceleration of his death. The judgment of the trial court must thus stand and, accordingly, the decision of the court of appeals is hereby reversed.

Appellant contends that she is entitled to participate in the Workers' Compensation Fund based on the following chain of events. She initially claims that her decedent contracted an occupational disease, avian tuberculosis, arising out of and in the course of his employment at the zoo, and, prior to so contracting, he suffered from a coronary artery disease. The avian tuberculosis, she then asserts, directly resulted in serious, unusual stress which was the proximate cause of the acceleration of her decedent's death from a heart attack.

Before this court considers the question of proximate causation, this court must determine, as a threshold issue, whether there is an entitlement to the payment of death benefits from the Workers' Compensation Fund where death is accelerated by an occupational disease. Admittedly, no statute explicitly allows for such recovery. This court has, however, acknowledged the potential of a death claim predicated on death having been accelerated by an accidental injury where there was likewise no statute explicitly so allowing.

In *Weaver* v. *Indus. Comm.* (1932), 125 Ohio St. 465, this court first recognized entitlement to payment of death benefits from the Workers' Compensation Fund where an injury is the proximate cause of the acceleration of death just as where the injury directly causes the death itself. This court, in *Weaver* at 466, initially set forth the relevant statutory provision,[1] which did not expressly address this issue, and then it concluded as follows:

"Under * * * [G.C. 1465-82] the plaintiff in an appeal case from a denial of award by the Industrial Commission for death of a workman or employe [*sic*] has to establish that the injury was the proximate cause of the death, or was the proximate cause of the acceleration of death. [Citations omitted.]"

Thereafter, in *McKee* v. *Electric Auto-Lite Co.* (1958), 168 Ohio St. 77,

---

[1] G.C. 1465-82 provided as follows:

"In case the injury causes death within the period of two years, the benefits shall be in the amount and to the persons following * * *."

80 [5 O.O.2d 345], the court cited what was then R.C. 4123.59[2] and noted that there is no provision in this section allowing for the payment of death benefits as to an injury which merely accelerates a death from a pre-existing cause. Relying on *Weaver, supra,* the court in *McKee* nonetheless held in the syllabus as follows:

"Under the Workmen's Compensation Act, death from a pre-existing cause and accelerated by an accidental injury, in the course of and arising out of employment, is compensable, where the death is accelerated by a substantial period of time as a direct and proximate result of the accident."

The court of appeals unanimously determined, and indeed the parties do not contest that, for the purposes of the rule of *McKee,* "occupational disease" may be freely substituted for the words "accidental injury." This court can likewise perceive of no rational reason why the *McKee* rule regarding substantial acceleration should not also apply to those situations where death is accelerated by an occupational disease. In Ohio, both injuries and occupational diseases are compensable. Thus, the fact that this claim is grounded on the death having been accelerated, not by an accidental injury, but by an occupational disease, is a difference without a distinction. Accordingly, this court holds that under the Workers' Compensation Act, death from a pre-existing cause and accelerated by an occupational disease contracted in the course of and arising out of the scope of employment, is compensable where the death is accelerated by a substantial period of time as a direct and proximate result of the occupational disease.

Having concluded that there is a potential for recovery, this court may now consider whether the trial court properly found that recovery was warranted herein. The requisite degree of proof that appellant must demonstrate in order to recover is well-established. In *McKee, supra,* at 82, this court stated that "[t]here must be a substantial causal relationship between the accident and the accelerated death, and such relationship can not be proved by mere magic words of direct causation without evidence to definitely support it."

Previously, in *Fox* v. *Indus. Comm.* (1955), 162 Ohio St. 569 [55 O.O. 472], paragraph one of the syllabus, the court was somewhat more precise in discussing the requisite degree of proof in workers' compensation claims:

"In order to establish a right to workmen's compensation for harm or disability claimed to have resulted from an accidental injury, it is necessary for the claimant to show by a preponderance of the evidence,

---

[2] R.C. 4123.59 provided as follows:

"In case an injury to an employee causes death within a period of two years, and in cases in which compensation or disability on account of the injury has been continuous to the time of the death of the injured employee and the death is the result of such injury, benefits shall be in the amount and to the persons following * * *."

medical or otherwise, not only that his injury arose out of and in the course of his employment but that a direct or proximate causal relationship existed between his injury and his harm or disability."

In considering the issue of proximate cause in the workers' compensation context, this court has held that the definition of and principles governing, the determination of "proximate cause" in the field of torts are applicable. *Aiken* v. *Indus. Comm.* (1944), 143 Ohio St. 113, 117 [28 O.O. 50]. Specifically, the court in *Aiken* first noted that the determination of the proximate cause of an ultimate result may be difficult. It then stated that "* * * the proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred." *Id.* Similarly, in *Indus. Comm.* v. *Palmer* (1933), 126 Ohio St. 251, 257, the "but-for" test was used in determining proximate causation.

In applying these basic principles to the facts of the instant case, this court must remain mindful of its limited right of review herein. As was stated in *Swanton* v. *Stringer* (1975), 42 Ohio St. 2d 356, 359 [71 O.O.2d 325], a case in which entitlement to participate in the Workers' Compensation Fund was also disputed:

"The trial in the Court of Common Pleas is a trial *de novo. State, ex rel. Federated Department Stores,* v. *Brown* (1956), 165 Ohio St. 521 [60 O.O. 486]. If the evidence before that court is sufficient to support the result reached this court will not substitute its judgment."

It is within these guidelines that this court addresses the issue of whether there was sufficient evidence to support the trial court's determination that appellant had proved, by a preponderance of the evidence, a chain of direct and proximate causes demonstrating that the pre-existing cause that would eventually result in death, and an occupational disease that combined with Oswald's individual frailties, accelerated death by a substantial period of time.

At the outset, this court acknowledges that Oswald's attending physician, Dr. Michael Schaen, who testified at the trial level, did not use the magic words of direct causation. But just as this court will not allow the existence of the causal relationship between the occupational disease and accelerated death to be proved by use of mere magic words (see *McKee, supra*), it will correspondingly not require these magic words in order to find such causation. In either circumstance, there must be evidence to support the finding of causation.

This court must thus review the record in this case to determine if there is evidence in the record to support a finding of proximate causation. Based on the record in this case, reasonable minds could find, by a preponderance of the evidence, that Oswald had coronary artery disease, diabetes, and hypertension at the time his wrist became infected by atypical avian tuberculosis and that the latter disease was an occupational disease as defined in R.C. 4123.68(BB).

Further, it could be found that doctors could not accurately diagnose or effectively treat this rare disease. Oswald underwent two surgical operations, neither of which was successful. Indeed, it was not until cultures and tissues were taken during the second surgery and were examined both by local pathologists and by the Infectious Disease Department at the Center for Disease Control in Atlanta that the diagnosis of atypical avian tuberculosis was finally confirmed. And, it was not until this time that it was learned that Oswald's condition was untreatable. The record also indicates that the zoo persistently refused to acknowledge that Oswald's disease was occupational in nature, despite the fact that a report of an occupational disease had been filed with the Bureau of Workers' Compensation. The zoo offered Oswald no assistance in helping him to combat his disease.

The record indicates that throughout this period, Oswald's frustration with his doctors mounted as his painful condition continued, and his performance on the job was increasingly affected. There is also testimony in the record that Oswald was a highly sensitive individual, and the combination of the above-stated factors caused him distress and frustration, anger and resentment that he repressed, a continuing depression and "burn out."

Considering the testimony of Dr. Schaen in its totality, it may reasonably be understood to be that Oswald's death from a myocardial infarction was accelerated by his reaction to an extraordinarily difficult time with his work-acquired tuberculosis. For instance, in a letter dated June 1, 1977 and reaffirmed in a letter dated September 9, 1977, Dr. Schaen stated as follows:

"There is also an implication that I felt the Tuberculosis infection was responsible for the patient's death. This of course is not true. My point is that the patient's frustration in seeking medical treatment and cure for his condition, plus the turmoil involved in convincing the proper authorities that his wrist problem was related to his occupation, led to significant chronic stress which accelerated his coronary artery disease and led to his sudden death at age fifty-six [sic]. I do not feel the Tuberculosis infection itself was the cause of death. This was just an unusual situation, in which a highly sensitive individual with underlying diabetes and hypertension, developed an occupational illness which was rare, difficult to diagnose, difficult to treat, required many office visits and two surgical procedures leading to enormous frustration. It is in the context of the total person and the situation which I feel contributed to this individual's early death."

Based on the above-stated factors, this court does not find that there is insufficient evidence to support the result reached by the trial court. There is evidence in the record to the effect the appellant established, by a preponderance of the evidence, a chain of direct and proximate causes demonstrating that death was directly and proximately accelerated by the occupational disease, because the acceleration would not have occurred

but for the disease and Oswald's reaction to it. Stated somewhat differently, this court finds that the trial court's determination — that the combined result of the pre-existing disease, the occupational disease and Oswald's negative psychosomatic reactions directly and proximately caused his death at a substantially earlier time than would have been the case without the occupational disease — is supported by the record.

For the foregoing reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY and C. BROWN, JJ., concur.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

LOCHER, J., dissenting. The majority has once again attempted to support a preordained result without reference to the applicable facts and law. If a shred of evidence beyond the speculative ruminations of decedent's attending physician exists to support recovery, neither the majority nor I have been able to find it.

These attempts to modify the workers' compensation laws only pave the way for unlimited recovery from a fund diminished by ruling after ruling by this court. See, *e.g., Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90. I am therefore compelled to dissent.

The majority's reliance on *Weaver* v. *Indus. Comm.* (1932), 125 Ohio St. 465, and *McKee* v. *Electric Auto-Lite Co.* (1958), 168 Ohio St. 77 [5 O.O.2d 345], is as mystifying as it is misplaced. In *Weaver* this court affirmed the necessity for showing the injury was the proximate cause of the acceleration of death by allowing a jury instruction to such effect when the trial court originally refused to so charge.

In *McKee,* a case this court supposedly is approving and extending, the decedent's claimant sought to prove that a deep cut in decedent's middle left finger aggravated a pre-existing heart condition and hastened death. The basis for this assertion, as it is in the case *sub judice,* was testimony by decedent's personal physician who went one step further than the physician herein by claiming a direct causal relationship between the work-related finger accident and the coronary occlusion which actually caused the death.

Evidence was adduced in *McKee* to the effect that the decedent's pre-existing heart condition was well-advanced prior to the finger accident and any of a number of factors, from emotional upset to the common cold, could have accounted for the death. Finally, even plaintiff's counsel admitted "that only God can tell the extent of any acceleration or aggravation, and, if only God can tell, how can a jury of twelve human beings do more than speculate upon the question?" *Id.* at 80. This court's final con-

clusion was that although recovery might be possible when death was substantially accelerated by the wrongful act of the employer, the trial court erred in refusing to direct a verdict *in favor* of the defendant employer because the evidence was entirely speculative.

The instant case is virtually on all fours with *McKee*. Not only was the decedent suffering from a host of pre-existing ills including diabetes, hypertension and the coronary disease which ultimately culminated in his death, but his physician refused to establish a direct cause of death. If a myriad of intervening causal factors were insufficient to allow a directed verdict for appellees, the testimony of decedent's physician indicated he was actually *less* sure of causation than the firmly rejected testimony of the physician in *McKee*. Decedent's physician, Dr. Schaen, admitted, "I don't think there was any direct relationship [between the wrist infection and the heart attack]." In response to a question directed by the court asking Dr. Schaen about the direct and proximate cause of Oswald's death, the physician totally discredited his own letter which is the basis for the majority's opinion and result:

"It's a question that we are all here to try to figure out. I just have a gut feeling about it, that's why I wrote the initial letter that I felt it did excelerate [*sic*] his death. How much, how soon, it is hard for me to put my finger on, but that's just an opinion, it's just a gut opinion."

The basis for the majority decision is speculation without evidence to support the test of "direct and proximate result." This is in spite of our prior decision in *McKee* where we noted without equivocation that speculation cannot be the basis for recovery. It is ironic that the case cited by the majority with approval in reality represents the antithesis of today's result.

The analysis by the majority is as flawed as its legal precedent and evidence. First the majority concludes the words "direct and proximate causation" are magic and can be ignored. Once causation has been abolished by judicial fiat, the majority holds Oswald's employer entirely responsible for Oswald's death. This result is reached by castigating the employer for originally believing Oswald's wrist infection was not job-related — a belief buttressed by Oswald's *own* physician who originally misdiagnosed the problem. We are next led to believe that because the employer would not believe Oswald's self-diagnosis, Oswald began to suffer stress and a subsequent depression. The majority would have us speculate Oswald's pre-existing heart problems were accelerated by depression resulting in death, *i.e.*, since the employer lacked faith in Oswald's own diagnosis of his problems, stress ensued which in turn caused the depression, which in turn caused the heart condition to accelerate, which in turn caused the heart attack, which in turn caused death, and the employer must therefore be responsible for Oswald's death!

The majority, however, is not content with merely reaching a preordained result by forging a causal chain linking one speculation after

another. The opinion also creates an "egg shell" plaintiff rule that suggests an employer is responsible for any exacerbation of pre-existing condition, regardless of cause, once the magical incantation "job-related stress" is invoked to abolish "direct causation." Presumably, the majority does not realize that after this opinion is issued employers will not hire marginally disabled individuals or those individuals with non-job-related pre-existing emotional or physical infirmities. Employers will justifiably fear both extensive workers' compensation payments and intentional tort liability if anything on or off the job occurs to those employees. This fear is entirely justified when the majority's analysis is stripped of its inconsistencies and rhetoric leaving the core of this opinion — a "but-for" test with an impossible burden on the employer to show lack of speculative causation.

The test for determining compensibility based on an accelerated pre-existing condition is succinctly set forth in *Swanton* v. *Stringer* (1975), 42 Ohio St. 2d 356 [71 O.O.2d 325]. To recover, claimant must establish "that such disability was accelerated by a substantial period of time as a *direct and proximate* result of such injury. *Id.* at paragraph a of the syllabus. A reading of both the majority opinion and the trial court opinion indicates that no objective evidence was adduced to show the employer directly and proximately caused Oswald's death. While this court will not substitute its own judgment for the trial court's where evidence is sufficient to support the results reached, it is certainly our duty to reverse where no causation has been shown. This is such a case. It is unfortunate that the majority has now created a "but-for" test to usurp the previously well-established legal causation analysis.

Tragedy is a condition of life prevalent throughout the state, the country, and the world. As Supreme Court Justices in a court of law we must act with compassion and do what we can to ameliorate suffering. This does not mean that we may unilaterally act in contravention of law, logic, and precedent to reach preordained results for the few to the detriment of the many. Our workers' compensation system is one of the finest in the country and should work to the benefit of the employees *and* employers.

Until the majority recognizes the institutional constraints upon this court in applying facts to law and the full ramifications its decision will have against employees with pre-existing medical problems, I am compelled to dissent.

HOLMES and WRIGHT, JJ., concur in the foregoing dissenting opinion.

HOLMES, J., dissenting. I join in the extremely well-expressed dissent of Justice Locher and also in the dissent of Justice Wright. It is only necessary to state, in addition to the commentary in such dissents, that the majority opinion unfortunately and unreasonably expands upon the law with which I concurred in *Village* v. *General Motors Corp.* (1984), 15 Ohio St. 3d 129, 135. As noted by Justice Wright, I emphasized in such

concurrence the need to clearly establish the existence of the causal relationship between the occupational disease and the condition for which the claim is made. Here, the majority has completely discarded the necessity for such a showing and, as noted by Justice Locher, supplanted in its place the so-called "but-for" approach. The majority places an additional nail in the coffin of valid principles of workers' compensation law in Ohio. I had not intended such result in my concurrence in *Village;* therefore, I must dissent.

WRIGHT, J., dissenting. I concur in Justice Locher's dissent. I write separately to emphasize that the majority has incorrectly applied the requisite standards of proof and causation.

Although I agree that Oswald suffered an occupational disease, avian tuberculosis, I do not believe that the claimant established, by the requisite preponderance of the evidence, a legally adequate causal relationship between the occupational disease and Oswald's death from a heart attack.

As noted by Justice Holmes in his concurring opinion in *Village* v. *General Motors Corp.* (1984), 15 Ohio St. 3d 129, 135, a claimant "must initially present *substantial evidence* that the resultant heart attack arose from conditions in the course of employment." (Emphasis added.) In the present case, Dr. Schaen's statement that it was his "gut feeling" that Oswald's death was accelerated by job and disease-related stress does not satisfy this evidentiary requirement.

Furthermore, the majority has misapplied the rules of causation as they pertain to workers' compensation cases. The majority correctly notes that in order to prevail, a claimant must prove: (1) that the injury or disease arose out of and in the course of employment; (2) that a direct, proximate, or substantial causal relationship existed between the injury and the harm, disability, or death; and (3) that the death or disability was accelerated by a substantial period of time as a direct or proximate result of the injury or disease. *Fox* v. *Indus. Comm.* (1955), 162 Ohio St. 569 [55 O.O. 472]; *McKee* v. *Electric Auto-Lite Co.* (1958), 168 Ohio St. 77 [5 O.O.2d 345]; *Swanton* v. *Stringer* (1975), 42 Ohio St. 2d 356 [71 O.O.2d 325]. These plainly are rules of proximate causation.

The majority, however, after acknowledging that recovery is warranted only upon proof that the occupational disease is the proximate cause of death, mistakenly applies the less stringent cause-in-fact test. This test is satisfied upon proof that the harm complained of would not have occurred but for the wrongful actions of the guilty party. The test for proximate cause, on the other hand, is satisfied when the injury is one which might be reasonably anticipated or foreseen as a natural consequence of the wrongful act.

For the sake of argument, I will concede that the acceleration of Oswald's death may not have occurred "but for" his occupational disease. The disease may have been but one amongst many remote causes-in-fact of

his death. This test of causation, however, will neither support recovery under general principles of tort law nor under the Workers' Compensation Act.

The claimant, in order to prevail, must prove that Oswald's death by heart attack was a reasonably foreseeable consequence of the avian tuberculosis. Claimant has not, and indeed cannot, satisfy this requisite burden of proof as to causation. The avian tuberculosis was not the direct or proximate cause of Oswald's death. The occupational disease and the response of the parties to it were the direct, proximate causes only of Oswald's chronic stress. The stress, in turn, *may* have been a direct cause of Oswald's heart attack. This, however, is uncertain because Oswald suffered from many pre-existing ailments — coronary disease, hypertension, diabetes, and the aftereffects of heavy smoking — all of which could cause a sudden heart attack. In any event, even if the stress was a cause of Oswald's death, we simply cannot go so far down the chain of causation to conclude that the avian tuberculosis directly or proximately caused the fatal heart attack. In light of Oswald's prior medical history, we can merely speculate whether the stress accelerated Oswald's death by the required substantial period of time. Thus, the relationship between the occupational disease and Oswald's death from a heart attack is indirect at best; that is not sufficient, however, to entitle the claimant to the benefits of the workers' compensation system.

Thus, I must dissent.