OPINION
{¶ 1} Dairy Mart-Lawson Company ("Dairy Mart") appeals from a judgment entered upon a jury verdict of the Montgomery County Court of Common Pleas, which concluded that Angela C. Paris had the right to participate in the Workers' Compensation Fund for the conditions of arthritis of the left knee, medial meniscus tear of the left knee, lateral meniscus tear of the left knee, arthritis of the right knee, and medial meniscus tear of the right knee. The trial court awarded Paris attorney fees in the amount of $2,500 and reasonable litigation costs in the amount of $3,984.91, with interest, pursuant to R.C. 4123.512.
 {¶ 2} According to the evidence presented at trial, in 1984, when Paris was approximately 26 years old, she began working as a sales clerk and a back-up assistant manager at a King Kwik store in Germantown, Ohio. About a year later, the store became known as Stop-N-Go, and she continued to work there as an assistant manager. In 1989, Dairy Mart acquired the store. Paris continued to work at that location as an assistant manager until 1994, at which time she was promoted to store manager. Plaintiff held that position until August 2000, when she took medical disability leave. Paris was 42 years old when she ceased working.
 {¶ 3} The Dairy Mart store at which Paris worked was equipped with a TAC-2 safe, located underneath the store's check-out counter. The floor consisted of hard concrete with tile. During Paris' employment, no mat, padding or rug was placed on the floor near the safe. Paris testified that because only the bottom part of the safe opened, she would need to get down on her hands and knees to get inside it. She testified that as an assistant manager, she would go into the safe approximately five to six times per day, one day per week. As manager, she would go into the safe six to twelve times per day, six or seven days per week.
 {¶ 4} Beginning in 1988, Paris complained of pain in both of her legs. She saw her family physician, Dr. Bernard Berks, D.O. Paris was referred to Dr. Dwight A. Jacobus, D.O, for evaluation. Dr. Jacobus reported no orthopedic, neurologic or vascular abnormalities. In March 1996, at the request of Dr. Berks, Paris was examined by Dr. Stephen Greer, a vascular surgeon, for complaints of right lower leg extremity pain. Dr. Greer performed a peripheral venous evaluation and found evidence of superficial chronic thrombosis (blood clots) in the greater saphenous veins bilaterally. On April 19, 1996, Paris visited Dr. Berks with continued leg pain in the "anterior lateral aspect of lower (right) leg from knee down to ankle." Dr. Berks diagnosed her with a sprained right knee. In August 1997, Paris was evaluated by Dr. Laszlo Posevitz, D.O., a vascular surgeon. Although he likewise indicated that Paris had thrombosed superficial veins involving the saphenous, he did not believe that they were causing her leg pain. A nerve test was also performed, which was normal. Dr. Posevitz recommended that she see a spine orthopedist.
 {¶ 5} In the summer of 2000, Dr. Berks referred Paris to an orthopedic surgeon, Dr. DiCicco, who first saw her on August 1, 2000. Dr. Joseph DiCicco diagnosed Paris with severe arthritis in her left knee, with medial and lateral meniscal tears. Plaintiff was taken off work in August 2000 and sought disability benefits through Hartford Insurance Company. In the summer of 2001, Paris underwent a total knee replacement of her left knee. In March 2002, Paris was diagnosed with severe arthritis in her right knee, as well.
 {¶ 6} On June 10, 2001, Angela Paris submitted a workers' compensation claim, alleging that she had sustained a medical condition involving her knees as a result of her employment with Dairy Mart. The Industrial Commission denied her claim and subsequent appeals. On January 15, 2002, Paris filed suit in the Montgomery County Court of Common Pleas. The case was tried to a jury on December 11 and 12, 2002. During the trial, Dr. DiCicco testified on behalf of Paris that the conditions at Dairy Mart, i.e., the repetitive kneeling and the pressure on the knees from the hard floor, caused the meniscal tears and the knee arthritis in both of Paris' knees. Dr. Dean Erickson, M.D., a physician with a specialty in occupational medicine, testified on behalf of Dairy Mart that Paris' knee conditions were unrelated to her work at Dairy Mart. He opined that it would not make sense for an individual on her knees to develop degenerative meniscus disease and degenerative cartilage disease in the lateral and medial compartments of the knees.
 {¶ 7} Following closing arguments, the trial court instructed the jury as to five ways by which Paris could participate in the Workers Compensation Fund. The trial court included the following instruction:
 {¶ 8} "A preexisting, non-occupational disease aggravated during employment is not compensable. However, a pre-existing, non-occupational disease is compensable if Plaintiff proves by a preponderance of the evidence that the pre-existing non-occupational disease was aggravated by cumulative workplace exertions and the workplace exertions are greater than those encountered in ordinary non-employment life."
 {¶ 9} Although Dairy Mart agreed with the first sentence of that instruction, it objected to the remainder of the paragraph, arguing that Ohio law does not support such an instruction. After deliberation, the jury concluded that Paris had the right to participate in the Workers' Compensation Fund for the conditions of arthritis of the left knee, medial meniscus tear in the left knee, lateral meniscus tear of the left knee, arthritis of the right knee, and medial meniscus tear of the right knee. The trial court subsequently awarded Paris attorney fees in the amount of $2,500 and litigation expenses in the amount of $3,984.91, with interest, and the costs of the action.
 {¶ 10} Dairy Mart asserts two assignments of error on appeal.
 {¶ 11} "1) The trial court committed prejudicial error by charging the jury that a pre-existing non-occupational disease is compensable if a plaintiff proves by a preponderance of the evidence that the pre-existing non-occupational disease was aggravated by cumulative workplace exertions and the workplace exertions are greater than those encountered in ordinary non-employment life."
 {¶ 12} Dairy Mart claims that the trial court committed prejudicial error when it instructed the jury that a pre-existing, non-occupational disease is compensable if a plaintiff proves by a preponderance of the evidence that the pre-existing non-occupational disease was aggravated by cumulative workplace exertions and the workplace exertions are greater than those encountered in ordinary non-employment life. It asserts that such an instruction is not supported by the Supreme Court of Ohio's opinion in Brody v. Mihm (1995), 72 Ohio St.3d 81, 647 N.E.2d 778, upon which the trial court relied, and that the jury was mislead by its inclusion. Dairy Mart states that the supreme court's holding reaffirmed its holding in State ex rel. Miller v. Mead Corp. (1979),58 Ohio St.2d 405, 12 O.O.3d 348, 390 N.E.2d 1192, that a pre-existing, non-occupational disease aggravated during employment is not compensable, and it argues that any conflicting statements were dicta. Dairy Mart cites to several court of appeals opinions which have construed Brody in this manner.
 {¶ 13} Paris responds that the supreme court chose to provide guidance and instruction on the compensability of wear-and-tear aggravation claims in Brody, and that Brody does not stand for the general proposition that a non-occupational disease, which is aggravated during employment, is not compensable in all situations. In particular, she characterizes Brody as stating that a claim for wear-and-tear aggravation of a non-occupational disease would be compensable if the claimant showed that the employment contribution was legally, as well as medically, sufficient to give rise to a compensable disability. She emphasizes that the Supreme Court of Ohio stated that "[t]his would require a showing that the workplace exertion or cumulative workplace exertions are greater than those encountered in ordinary nonemployment life." She argues that her interpretation is bolstered by the corresponding footnote, in which the supreme court stated: "We are not hereby imposing this additional legal requirement upon the claimant in aggravation claims already compensable under existing law. We note such a causal requirement only in connection with clams for wear-and-tear aggravation of pre-existing disease, where the aggravation itself does not rise to the level of separate compensability." Brody,72 Ohio St.3d at 84, n. 2. As an alternative argument, Paris contends that even if the disputed instruction were erroneous, that error was harmless, because the jury had a sufficient basis to rule in her favor on other causation grounds.
 {¶ 14} We agree with Dairy Mart that Ohio law does not recognize a claim for wear-and-tear aggravation of a non-occupational disease. InBrody, the plaintiff, a self-employed dentist who worked for approximately twenty-eight years, alleged that due to constantly working in awkward positions, he aggravated a pre-existing arthritic condition in his left hip. He indicated that he "constantly stood in a forward bent and twisted position" as he worked on his patients. The Industrial Commission denied his claim, and the trial and appellate courts affirmed the denial. On appeal to the supreme court, the dentist argued that inVillage v. General Motors Corp. (1984), 15 Ohio St.3d 129, 472 N.E.2d 1079, and Oswald v. Connor (1985), 16 Ohio St.3d 38, 476 N.E.2d 658, the supreme court had effectively overruled its holding in Miller that a pre-existing disease aggravated during employment is not compensable. The supreme court disagreed, stating:
 {¶ 15} "In Village, we held that `[a]n injury which develops gradually over time as the result of the performance of the injured worker's job-related duties is compensable under R.C. 4123.01(C).' In so holding, we overruled a tortuous line of cases which suggested that an injury must be the result of a sudden mishap occurring at a particular time and place to be compensable. Included were the very cases relied upon in Miller to find that the claimant's disability in that case was not the result of an injury.
 {¶ 16} "The change in the definition of `injury,' however, does not affect that portion of Miller which holds that a pre-existing disease aggravated during employment is not compensable. Claimant does not contend that the daily physical stresses and strains of his employment support an award under Village.
 {¶ 17} "In Oswald, we held that `death from a pre-existing cause and accelerated by an occupational disease contracted in the course of and arising out of the scope of employment, is compensable * * *.' (Emphasis added.) This holding was simply an extension of case law decided prior to Miller. Prior to Miller, we had held that death or disability resulting from a pre-existing cause or disease and acceleratedby an injury, in the course of and arising out of employment, is compensable. Swanton v. Stringer (1975), 42 Ohio St.2d 356, 71 O.O.2d 325, 328 N.E.2d 794; McKee v. Elec. Auto-Lite Co. (1958), 168 Ohio St. 77, 5 O.O.2d 345, 151 N.E.2d 540. After Oswald, claims for aggravation of a pre-existing disease are compensable only where the aggravation itself qualifies as a compensable injury or occupational disease." Brody,72 Ohio St.3d at 82-83.
 {¶ 18} After setting forth the current state of Ohio law regarding claims for aggravation of a pre-existing disease, the Supreme Court of Ohio acknowledged that the standard for aggravation claims has been subject to substantial criticism. Id. at 83 and n. 1 (citing numerous jurisdictions which have allowed "aggravation claims where the aggravating daily strains of the workplace occurred over protracted periods of time"). However, it declined to address the viability ofMiller "since the claimant in this case would be precluded from receiving compensation in any event." Id. at 83. The supreme court then proceeded to illustrate that Dr. Brody would not prevail even if it were to alter the existing law. It set forth the standard adopted by other jurisdictions, stating: "Even if we were to hold compensable a claim for wear-and-tear aggravation of a non[-]occupational disease, the claimant would have to show that the employment contribution is legally, as well as medically, sufficient to give rise to a compensable disability. This would require a showing that the workplace exertion or cumulative workplace exertions are greater than those encountered in ordinary non[-]employment life." Id. at 83. The court reasoned that the dentist's claim would fail under this standard as well, because the ordinary stresses and strains involved in his practice were no greater than those encountered in non-employment life. The court thus re-emphasized that it need not reconsider Miller at that time.
 {¶ 19} A plain reading of Brody, in its entirety, gives no indication that the supreme court intended to alter the existing law at that time. To the contrary, the court indicated that the holding inMiller, i.e., that a pre-existing disease aggravated during employment is not compensable, was unaffected by subsequent case law, and it twice stated that it would not reconsider Miller at that time. The supreme court's analysis of the dentist's aggravation claim was dicta and not a holding of the court.
 {¶ 20} As stated above, Paris asserts that the Supreme Court of Ohio meant its wear-and-tear aggravation claim analysis to be guidance to lower courts, and she emphasizes the court's statement in footnote 2 that "[w]e are not hereby imposing this additional legal requirement upon the claimant in aggravation claims already compensable under existing law." She further asserts that it makes little sense to allow claims for an aggravation of a pre-existing injury, an injurious aggravation of a pre-existing disease, an acceleration of a pre-existing disease and an injury which gradually develops over time, but not one for wear-and-tear aggravation.
 {¶ 21} We agree that the Supreme Court of Ohio intended to provide some degree of guidance. By setting forth the standards applied in other jurisdictions, the supreme court has suggested under what facts it might reconsider Miller in a future case and what standards might be adopted at that time. However, it specifically rejected the notion that the case before it contained such facts. Footnote 2 merely makes clear that the supreme court did not intend to alter the requirements for aggravation claims that are compensable under existing law. We therefore conclude that Brody does not provide that a claim for wear-and-tear aggravation of a non-occupational disease would be compensable if the claimant showed that the employment contribution is legally, as well as medically, sufficient to give rise to a compensable disability. Although we might agree with Paris that it makes little sense not to allow a wear-and-tear aggravation claim, we are constrained to follow the law as set forth by the Supreme Court of Ohio. Accordingly, we conclude that the trial court erred in giving a jury instruction on wear-and-tear aggravation of a pre-existing non-occupational disease.
 {¶ 22} Although the trial court should not have given an instruction on wear-and-tear aggravation of a pre-existing non-occupational disease, we agree with Paris that the instruction constituted harmless error. The present case implicates the two-issue rule, which provides that where a jury verdict may be based upon one of two or more issues, an error in jury instructions on one issue will be disregarded where the other issue could independently support the verdict, unless it is shown by "interrogatories or otherwise that the verdict is in fact based upon the issue to which the erroneous instruction related." Bush v. Harvey Transfer Co. (1946), 146 Ohio St. 657,67 N.E.2d 851, paragraph three of the syllabus; see Pulley v. Malek
(1986), 25 Ohio St.3d 95, 97, 495 N.E.2d 402; Wagner v. RocheLaboratories, 85 Ohio St.3d 457, 461, 709 N.E.2d 162, 1999-Ohio-309. The supreme court has recognized that the two-issue rule is inapplicable "where there is a charge on an issue upon which there should have been no charge." Ricks v. Jackson (1959), 169 Ohio St. 254, 159 N.E.2d 225, paragraph four of the syllabus. In such cases, it is presumed that the erroneous instruction is prejudicial. However, the court has recently held that the giving of an instruction that should not have been given is not always sufficiently prejudicial to warrant a reversal of the judgment. Wagner, 85 Ohio St.3d 457; Hampel v. Food Ingredients,89 Ohio St.3d 169, 729 N.E.2d 726, 2000-Ohio-128.
 {¶ 23} In Hampel, a male employee alleged that he had been sexually harassed by a male supervisor and that the harassment had constituted intentional infliction of emotional distress. At trial, the jury was given instructions on both claims. The jury returned a general verdict in favor of the employee and awarded compensatory and punitive damages. The court of appeals reversed the judgment of the trial court on the sexual harassment claim and remanded for a new trial. The appellate court further ruled that the two-issue rule was inapplicable, because one claim was submitted to the jury in error and the damages could not be differentiated among the claims. The supreme court reversed and reinstated the jury verdict. Although it agreed that the sexual harassment claim should not have been submitted to the jury, it concluded that the error was harmless, because "[u]pon a thorough review of the entire transcript of the proceedings before the trial court, it is our determination that the jury, if not instructed on sexual harassment, would still have decided in [the employee's] favor on his claim for intentional infliction of emotional distress." Hampel,89 Ohio St.3d at 186. The court further remarked that given the failure to request interrogatories that might explain the verdicts, "we must presume the awards were based on both claims; and since one of these claims was tried free of error, error in presenting the other will be disregarded." Id. at 187. Thus, it concluded that a new trial was not required.
 {¶ 24} In the instant case, the jury was instructed that Paris was entitled to participate in the Workers' Compensation Fund if any of five circumstances existed: (1) she had suffered an injury, including a physical harm that developed over time as the gradual result of her work on job-related duties; (2) she aggravated a pre-existing condition; (3) she had a pre-existing condition that was accelerated or hastened by a substantial period of time by an injury; (4) she contracted an occupational disease in the course of her employment with Dairy Mart; or (5) she had a pre-existing non-occupational disease that was aggravated by cumulative workplace exertions, which were greater than those encountered in ordinary non-employment life. The trial court further instructed that Paris was not entitled to participate in the Workers' Compensation Fund if her alleged conditions were caused primarily by "the natural deterioration of tissue, organ and/or body part." Dairy Mart objected to the instructions regarding acceleration of a disabling condition and aggravation of a pre-existing non-occupation disease by cumulative workplace exertions. Only the wear-and-tear aggravation instruction is raised on appeal.
 {¶ 25} Dairy Mart asserts that the single most important charge that the jury received was on whether the aggravation of a pre-existing non-occupational disease was compensable. It notes that its expert, Dr. Erickson, testified that Paris had arthritis in many parts of her body, and that obesity and smoking contributed to her knee problems. Dr. Erickson testified that the operative report that was created when her left knee was replaced indicated that the changes in her left knee resulted from degeneration, not a discreet injury. Dairy Mart further pointed to Paris' disability applications, which did not indicate that her knee problems were work-related.
 {¶ 26} Upon review of the entire transcript of the trial, the jury was given substantial evidence upon which to conclude that Paris was entitled to participate in the Worker's Compensation Fund, absent the erroneous instruction. Paris' evidence did not concentrate on a theory of causation based on an aggravation of pre-existing, non-occupational disease. Rather, Dr. DiCicco, her expert witness, testified that Paris' work conditions were the cause of her arthritis and meniscal tears. Specifically, he stated that "as far as the meniscal tears are concerned, repetitive squatting, twisting, very common mechanism to cause meniscal tears and pathology, . . . and the repetitive kneeling and pressure on the knees on the hard floor, um, is the cause of her knee arthritis." Dr. DiCicco indicated that Paris' knee condition was not the result of rheumatoid arthritis, a systemic form of arthritis. Dr. DiCicco also provided testimony that, compared to the general public, Paris spent an unusual amount of time on her knees at work, that being on her knees was an unusual hazard of her job as a manager, and that these conditions caused her meniscal tears and knee arthritis. Thus, Paris presented evidence to support the theories that she had suffered an injury that developed gradually as a result of her managerial duties and that she had contracted an occupational disease in the course of her employment with Dairy Mart.
 {¶ 27} Dairy Mart did not request special interrogatories that might have explained the basis upon which the jury found that Paris was entitled to participate in the Workers' Compensation Fund. Thus, we have no basis to conclude that the jury ruled in favor of Paris based on the aggravation of a pre-existing non-occupational disease. Because the jury was properly charged on four methods of causation and the record supports a verdict in Paris' favor based thereon, the error in charging the jury on aggravation of a pre-existing, non-occupation disease is not sufficiently prejudicial to warrant a reversal.
 {¶ 28} Dairy Mart's first assignment of error is overruled.
 {¶ 29} "2) The trial court erred in awarding reimbursable litigation expenses to plaintiff in the amount of $3,984.91."
 {¶ 30} Dairy Mart contends that the trial court improperly awarded Paris $3,984.91 in litigation expenses, pursuant to Kilgore v. ChryslerCorp., 92 Ohio St.3d 184, 749 N.E.2d 267, 2001-Ohio-166. Dairy Mart asserts that only $1,482.50 of those expenses were properly awarded under R.C. 423.512(F). It argues that Kilgore does not support an award for all costs of litigation and that most of the costs and expenses requested by Paris were simply ordinary costs and expenses associated with the practice of law, including telefax charges, photocopies, parking expenses, investigative services, and trial exhibits. Paris responds that all of the expenses that she claimed were litigation expenses incurred in relation to preparing and trying her case. Thus, she argues, the trial court properly awarded them, pursuant to Kilgore and Moore v. GeneralMotors Corp. (1985), 18 Ohio St.3d 259, 480 N.E.2d 1101.
 {¶ 31} R.C. 4123.512(F) provides: "The cost of any legal proceedings authorized by this section, including an attorney's fee to the claimant's attorney to be fixed by the trial judge, based upon the effort expended, in the event the claimant's right to participate or to continue to participate in the fund is established upon the final determination of an appeal, shall be taxed against the employer or the commission if the commission or the administrator rather than the employer contested the right of the claimant to participate in the fund. The attorney's fee shall not exceed twenty-five hundred dollars." The Supreme Court of Ohio has construed this provision liberally in favor of employees and the dependents of deceased employees, in accordance with R.C. 4123.95. SeeCave v. Conrad, 94 Ohio St.3d 299, 301, 762 N.E.2d 991, 2002-Ohio-793. InMoore, the supreme court held that "the cost of any legal proceedings authorized by this section" included fees charged by an expert witness whose deposition was used in a workers' compensation proceeding and, thus, those fees were reimbursable under the statute. In Kilgore, the court held that "an attorney's travel expenses incurred in taking a deposition of an expert are a reimbursable `cost of any legal proceedings' under R.C. 4123.512(F)." 92 Ohio St.3d 184, syllabus. The following year, the Supreme Court of Ohio held that reasonable videotaped deposition expenses were reimbursable under R.C. 4123.512(F). Cave,94 Ohio St.3d 299, syllabus.
 {¶ 32} "Central to the court's dispositions in Moore and Kilgore
was the rationale that statutes providing for reimbursement of costs to successful claimants in workers' compensation appeals are `designed to minimize the actual expense incurred by an injured employee who establishes his or her right to participate in the fund.' Accordingly, in enacting statutes such as R.C. 4123.512(F), the General Assembly `has demonstrated its intent that a claimant's recovery shall not be dissipated by reasonable litigation expenses connected with the preparation and presentation of an appeal pursuant to R.C. 4123.519,' the predecessor of R.C. 4123.512."
 {¶ 33} Cave, 94 Ohio St.3d at 301 (citations omitted). Moreover, the supreme court has repeatedly stated that the traditional dichotomy between "costs" and "expenses" in civil cases is not directly applicable to workers' compensation cases. E.g., Kilgore, 92 Ohio St.3d at 187. Thus, pursuant to Kilgore, R.C. 4123.512(F) allows reimbursement for reasonable litigation expenses which "bear a direct relation to a claimant's appeal that lawyers traditionally charge to clients and that also have a proportionally serious impact on a claimant's award." Id.
 {¶ 34} In the present case, the trial court held that Paris' request for reimbursement of the costs of court filings, investigative services, reporting services, travel expenses, photocopies, trial exhibits, witness fees, facsimiles, and Federal Express messenger service were costs that are traditionally charged to clients and that have a direct relation to the claimant's appeal. The trial court concluded that Paris' expenses were reasonable costs of litigation, which were recoverable under R.C. 4123.512(F). We agree. Each of the claimed expenses were incurred in connection with the appeal of Paris' workers' compensation claim. They were not "ordinary overhead costs and expenses associated with the practice of law," as Dairy Mart contends.
 {¶ 35} We are mindful that Moore, Kilgore and Cave each concerned expenses incurred in the deposition of a medical expert witness. See, also, Schuller v. U.S. Steel Corp., Trumbull App. No. 2002-T-0165, 2003-Ohio-4870 (interpreting Kilgore narrowly). Although the disputed expenses in the instant case do not concern the deposition of Paris' medical expert, the principles set forth in Moore, Kilgore and Cave are applicable beyond the deposition process and the supreme court has not limited those principles to that factual circumstance. Nor have we done so. In Kilgore v. Chrysler Corporation (Feb. 4, 2000), Montgomery App. Nos. 17906, 17915, affirmed, 92 Ohio St.3d 184, we disapproved of Andrewsv. Sajar Plastics, Inc. (1994), 98 Ohio App.3d 61, 647 N.E.2d 854, which held that "other fees" such as postage, photocopies, Airborne Express, travel expenses, and the expert's fee for trial attendance, all of which pertained to the preparation for and presentation of the expert's trial testimony, were not recoverable. We concluded that the ruling in Andrews
failed to apply the statutory requirement of a liberal construction in favor of employees in the workers' compensation context and disregarded the supreme court's observation that successful claimants are entitled to recover significantly greater costs than would be so in ordinary litigation. Based on the foregoing, we conclude that the trial court properly held that all of Paris' claimed litigation expenses were recoverable under R.C. 4123.512(F). We note that Dairy Mart has not challenged the reasonableness of those expenses and, accordingly, we will not address it.
 {¶ 36} Dairy Mart's second assignment of error is overruled.
 {¶ 37} The judgment of the trial court will be affirmed.
Fain, P.J. and Brogan, J., concur.