OPINION
{¶ 1} Defendant-appellant, The Ohio Valley Coal Company, appeals from a Belmont County Common Pleas Court judgment finding that plaintiff-appellee, Sharon Myers, is entitled to participate in the Workers' Compensation fund for the death of her husband, David Myers.
 {¶ 2} David Myers worked at Ohio Valley Coal. During his employment there, he had three workers' compensation claims allowed. The first injury occurred in November 1982, when Myers suffered an acute low back strain. The second injury occurred in November 1987, when he suffered a shoulder contusion, neck contusion, and aggravation of pre-existing fibrositis and fibromyalgia. The third injury occurred in May 1989, when he suffered a lumbrosacral strain. Myers quit working in October 1993.
 {¶ 3} Dr. Ellen Kitts treated Myers. Myers also received steroid injections from Dr. Romano to help with his chronic pain. According to Dr. Kitts, the steroids caused Myers to gain a significant amount of weight, which led to Myers developing diabetes and hypertension. Myers passed away on June 20, 2001 at age 53. Myers' cause of death was cardiac arrest due to coronary artery disease and diabetes. Dr. Kitts opined that the conditions allowed in Myers' workers' compensation claims accelerated his death over a substantial time period.
 {¶ 4} Appellee filed a complaint in the trial court after her claims were denied by the Industrial Commission. The case proceeded to a bench trial on November 12, 2003. The trial court issued its judgment entry on May 18, 2004, finding that appellee was entitled to participate in the Workers' Compensation Fund. Appellant filed a timely notice of appeal on June 15, 2004.
 {¶ 5} Appellant raises two assignments of error, the first of which states:
 {¶ 6} "The trial court erred when it granted judgment for plaintiff without evidence of a pre-existing condition, a prerequisite to proving that a workplace injury substantially accelerated death due to a pre-existing condition."
 {¶ 7} The Ohio Supreme Court has held that payment of death benefits from the Workers' Compensation Fund is allowed where an injury is the proximate cause of the acceleration of death, just as where the injury directly causes the death itself. Oswald v. Connor (1985),16 Ohio St.3d 38, 40, 476 N.E.2d 658; Weaver v. Indus. Comm. (1932),125 Ohio St. 465, 181 N.E. 894. The acceleration of death from a pre-existing cause is only compensable "where the death is accelerated by a substantial period of time as a direct and proximate result of the accident." McKee v. Electric Auto-Lite Co. (1958), 168 Ohio St. 77, syllabus, 151 N.E.2d 540.
 {¶ 8} Thus, in order for appellee to prevail under this McKee theory of recovery, she had to prove that Myers had (1) a pre-existing condition, (2) that his death was accelerated by a substantial period of time, and (3) that the acceleration was a direct and proximate result of his workplace accidents. Appellant raises arguments as to each of these elements.
 {¶ 9} An appellate court will not substitute its judgment in a case in which entitlement to participate in the Workers' Compensation Fund is disputed, if the evidence before the trial court is sufficient to support the result reached. Oswald, 16 Ohio St.3d at 42.
 {¶ 10} Appellant first contends that appellee failed to prove Myers suffered from a pre-existing condition. It argues the trial court ignored the requirement that appellee show that Myers suffered from a pre-existing condition at the time he suffered his workplace injuries. Appellant argues that the evidence showed that Myers did not develop coronary disease or diabetes until well after his workplace injuries occurred. Therefore, it was not possible to prove that the condition that caused Myers' death pre-existed his workplace injuries.
 {¶ 11} Myers' cause of death, as listed on his death certificate, was cardiac arrest, due to coronary artery disease, due to diabetes. (Tr. 14). The trial court found that the totality of the evidence supported a finding of a pre-existing heart condition. However, it seems that the evidence may not support this finding.
 {¶ 12} The trial court found that appellant's evidence, specifically Dr. Ralph Lach's testimony that coronary artery disease has a behavioral component and is rarely identified prior to the presentation of symptomology, supported a finding that Myers had a pre-existing heart condition. However, this reasoning is speculative. We must examine Myers' medical history, as presented at trial, to demonstrate why appellee did not present evidence of a pre-existing condition.
 {¶ 13} Four witnesses testified in this case. The two main witnesses were Dr. Kitts and Dr. Lach. Dr. Kitts treated Myers for the ten years preceding his death. She dealt solely with Myers' fibromyalgia and chronic pain. Dr. Lach is a cardiologist who never treated Myers, but reviewed his medical records.
 {¶ 14} Dr. Kitts testified about Myers' previous workers' compensation claims. In 1982, Myers suffered an acute low back strain. (Tr. 7). In 1987, he suffered a shoulder and neck contusion that aggravated his pre-existing fibrositis and fibromyalgia. (Tr. 7-8). And in 1989, he suffered a lumbrosacral strain. (Tr. 8). Dr. Kitts began treating Myers in 1990. Prior to that time, Myers had been treating with Dr. Romano.
 {¶ 15} Dr. Romano treated Myers in the 1980s. During this time, Dr. Romano gave Myers trigger point injections of steroids and anesthetic. (Tr. 9). Dr. Kitts opined that these steroid injections caused Myers to gain a significant amount of weight. (Tr. 13). She believed that the weight gain then led to Myers' developing diabetes, hypertension, and sleep apnea. (Tr. 13). Dr. Kitts opined that these conditions, "heated up coronary artery disease." (Tr. 13).
 {¶ 16} When Dr. Kitts began treating Myers, he suffered from severe back pain and fibromyalgia. (Tr. 8-9). She treated Myers with various medications, physical therapy, and exercises. (Tr. 10-11). Dr. Kitts testified that before the Myers' workplace injuries, he was a very active man, but after the injuries, he became very inactive. (Tr. 16). This led to Myers becoming unhealthy. (Tr. 16). Additionally, Dr. Kitts testified that the steroid treatment could have caused Myers' diabetes. (Tr. 16). She also stated that steroid use causes weight gain. (Tr. 16). Because Myers' cause of death was coronary artery disease caused by diabetes, Dr. Kitts opined that the treatment for Myers' injuries could have caused his death. Dr. Kitts further admitted that Myers' steroid injections were stopped by 1990. (Tr. 38). However, Myers did not develop hypertension until 1994 and did not develop diabetes until approximately 1999. (Tr. 38-39). Dr. Kitts further testified that sleep apnea can be a cause of sudden death, so that condition could have led to Myers' cardiac arrest. (Tr. 17).
 {¶ 17} Importantly, appellee testified that in 1982, when Myers suffered his first workplace injury, he did not suffer from diabetes, hypertension, or obesity. (Tr. 58).
 {¶ 18} What is notably absent is any testimony that Myers suffered from coronary artery disease or diabetes before he was injured at work.
 {¶ 19} In Mitchell v. Mead Paper Co. (Aug. 17, 1982), 4th Dist. No. 885, the Fourth District examined what type of evidence is necessary to prove a pre-existing condition. In looking at three other cases, the court noted the testimony by doctors as to the alleged pre-existing conditions:
 {¶ 20} "In Smith there was `probably some underlying vascular disease.' In Senvisky the underlying disease, `should be considered an aggravating factor.' In Swanton we have the very specific testimony, `would substantially aggravate this pre-existing condition.'" Id.
 {¶ 21} The court observed that in the first two cases the evidence was not sufficient to prove a pre-existing condition, while in the third case it was. It then pointed out that in the case before it, one doctor testified that "unquestionably" the claimant had pre-existing atherosclerosis while another testified that he was "fairly sure" that the claimant had pre-existing atherosclerosis. The court found that these medical opinions were sufficient evidence that the claimant did have a pre-existing condition. It further reasoned:
 {¶ 22} "There is, of course, no testimony by any doctor that, as a matter of observed fact, claimant had atherosclerosis in September of 1976, but as noted above if that were the standard, aggravation of a pre-existing asymptomatic disease could never be proved. Every time a doctor would testify on direct that he held the opinion the disease existed, he would be asked, on cross, if he had actually observed the disease. He could only answer, that he had not, but `assumed' based on reasonable medical certainty that it existed. As such, no claimant could ever meet his burden of proof because it would be logically impossible." Id.
 {¶ 23} The Ohio Supreme Court has held that, "[i]n an action brought by a dependent for a death award under the Workmen's Compensation Act, on the ground that the injury accelerated a diseased condition and hastened death, such diseased condition must exist at the time of injury, else the case is not compensable." (Emphasis added.) Ackerman v. Indus. Comm.
(1936), 131 Ohio St. 371, paragraph one of the syllabus, 3 N.E.2d 44. In this case, the best testimony we have that Myers had a pre-existing heart problem was Dr. Kitts' opinion that the steroids caused weight gain, which led to diabetes, hypertension, and sleep apnea, which "heated up coronary artery disease." (Tr. 13). However, Dr. Kitts never testified that the coronary artery disease was pre-existing. Without such testimony, it was unreasonable to presume that Myers had coronary artery disease before he injured himself at work.
 {¶ 24} Since appellee did not present evidence that Myers suffered from a pre-existing heart condition, or pre-existing diabetes, appellant's first assignment of error has merit.
 {¶ 25} Appellant's second assignment of error states:
 {¶ 26} "The trial court erred when it granted judgment for plaintiff without expert testimony supporting direct causation."
 {¶ 27} Here appellant argues that, if appellee had proceeded under a theory of direct causation, she failed to present evidence of a causal link between Myers' workplace injuries and his death.
 {¶ 28} At trial, appellee proceeded only under a theory of substantial acceleration of death from a pre-existing condition. This is evident in her proposed findings of fact and conclusions of law. In the conclusion section, appellee urged the trial court to find that McKee is controlling in this case. This is the only case appellee referred to in her proposed findings of fact and conclusions of law. She stated that McKee, applied to the facts of this case, required a finding that Myers' death was due to a pre-existing condition but was accelerated by a substantial period of time due to his industrial injuries and was a proximate result of those injuries. It is also evident in examining Dr. Kitts testimony. Dr. Kitts never testified as to direct causation, only as to the acceleration of Myers' death.
 {¶ 29} Additionally, this was the only theory on which the trial court based its award. The only cases the court cites in its opinion are McKee
and Oswald. As discussed above, McKee and Oswald dealt with the substantial acceleration of death from a pre-existing condition.
 {¶ 30} Thus, we need not examine this assignment of error further. We have already determined that appellee failed to prove that Myers suffered from a pre-existing condition. Accordingly, appellant's second assignment of error is without merit.
 {¶ 31} For the reasons stated above, the trial court's decision is hereby reversed and the Industrial Commission's decision is reinstated.
Vukovich, J., concurs.
DeGenaro, J., concurs. See concurring opinion.