# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**DEBORAH SCHULTZ, WIDOW OF ROBERT A. SCHULTZ,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0689** (BOR Appeal No. 2055241)
                         (Claim No. 2008030550)

**HOBET MINING, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Deborah Schultz, widow of Robert A. Schultz, by Counsel John H. Skaggs, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Hobet Mining, LLC, by Counsel H. Toney Stroud, filed a timely response.

The issue on appeal is dependent's benefits. The claims administrator denied Ms. Schultz's request for dependent's benefits on December 20, 2018. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its February 21, 2020, Order. The Order was affirmed by the Board of Review on August 11, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions.

> (c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in

1

the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Schultz was a coal miner for over thirty years. A chest x-ray was performed on November 14, 2015, and showed suspected emphysematous changes of the lungs and atelectasis and/or fibrosis of the lung bases. It was noted that the study was similar to a prior study. It was also noted that there were probably no acute infiltrates. A chest CT scan was also performed that day and showed no pulmonary emboli and a small granuloma unchanged from a prior study. A January 19, 2016, chest x-ray showed no acute findings. There was suspected parenchymal scarring in the lower lungs that was unchanged from a prior study. A CT scan was also performed that day and showed new small areas of airspace consistent with pneumonia. It also showed chronic obstructive pulmonary disease and mild adenopathy.

A chest x-ray showed emphysema and lymphadenopathy on February 8, 2016. A CT scan performed that day showed a questionable nodular density in the right lower lobe and mildly enlarged lymph nodes. A PET scan was performed on February 17, 2016, due to abnormal CT scan results. The PET scan revealed narrowing of the right bronchus intermedius greater than was observed nine days prior. The scan also showed a positive right lung base nodule. A May 19, 2016, chest CT scan showed a right lower lobe nodule that appeared to be smaller than seen on a prior scan. Nodules in the right upper and middle lobes were unchanged. Narrowing of the right bronchus had decreased since the previous scan.

Mr. Schultz's Death Certificate indicates he passed away primarily due to small cell lung cancer with metastasis. Other conditions were noted as chronic obstructive pulmonary disease and coronary artery disease. A July 13, 2018, Black Lung Benefits application indicates Mr. Schultz was exposed to asbestos, silica, diesel, gas, coal dust, and blasting rock in the course of his employment. An attached work history report indicates Mr. Schultz was exposed to the following products containing asbestos: clutches, brakes, gaskets, and pipe insulation.

Brett Oesterling, M.D., reviewed slides of Mr. Schultz's lung tissue and a record of the case. In his July 31, 2018, report, he opined that the lung tissue and lymph node samples showed minimal dust exposure, emphysema, suggestions of congestion due to heart failure, acute pneumonia, and evidence of thromboembolus. Dr. Oesterling concluded that the lack of significant structural damage in the lungs due to coal dust precludes coal dust as a significant factor in Mr. Schultz's death. Dr. Oesterling felt that Mr. Schultz's smoking history caused the changes in his

lungs that resulted in his death. The Occupational Pneumoconiosis Board's October 2, 2018, findings indicate it concluded that occupational pneumoconiosis was not a material contributing factor in Mr. Schultz's death. The claims administrator denied the request for dependent's benefits on December 20, 2018.

Charles Werntz, D.O., performed a Record Review on May 6, 2019, to address Mr. Schultz's cause of death. Dr. Werntz stated that there was no evidence in Mr. Schultz's autopsy of complicated or progressive fibrosis in the lungs and no asbestos bodies were seen. Dr. Werntz did feel, however, that Mr. Schultz had significant asbestos exposure while working as a mechanic. He also had a significant smoking history. Dr. Werntz stated that Mr. Schultz had a lot of exposure to silica and was diagnosed with black lung disease before his death. Mr. Schultz died as a result of small cell lung cancer, and tobacco smoke and silica exposure are associated with the disease. Dr. Werntz concluded that Mr. Schultz's cancer risk was increased by his smoking history and silica exposure. He noted that without the silica exposure, Mr. Schultz may not have developed lung cancer.

The Occupational Pneumoconiosis Board testified in a July 10, 2019, hearing. Jack Kinder, M.D., testified on behalf of the Board that a diagnosis of occupational pneumoconiosis could not be made in this case. He stated that though the pathological study showed refractory silica fragments, there was no evidence of fibrosis. Dr. Kinder stated that he had reviewed reports stating that silica is a carcinogen or possible carcinogen but disagreed that it results in small cell cancer. Dr. Kinder agreed with Dr. Oesterling's finding that coal dust did not contribute to Mr. Schultz's death. Dr. Kinder further agreed that Mr. Schultz's death was likely the result of his significant smoking history.

Johnsey Leef, M.D., testified on behalf of the Occupational Pneumoconiosis Board in a December 18, 2019, hearing that he reviewed chest x-rays and a CT scan taken approximately three months before Mr. Schultz passed away. Dr. Leef stated that he found no nodular fibrosis patterns consistent with occupational pneumoconiosis. Dr. Leef noted scarring due to Mr. Schultz's cancer treatment. Dr. Kinder testified that his opinion remained unchanged. Dr. Kinder was asked whether small cell lung cancer is associated with asbestos, and he acknowledged that it is; however, Dr. Kinder noted that there was no asbestos exposure in this case. Dr. Kinder stated that Mr. Schultz's lung cancer resolved after treatment, but the disease had metastasized to his brain, resulting in his death. Dr. Kinder asserted that Mr. Schultz would have died when and how he did regardless of his occupational exposure.

The Office of Judges affirmed the claims administrator's denial of dependent's benefits in its February 21, 2020, Order. The Office of Judges noted that the Occupational Pneumoconiosis Board testified in two hearings that occupational pneumoconiosis did not materially contribute to Mr. Schultz's death. Dr. Kinder acknowledged that asbestos exposure can cause small cell lung cancer, but the Office of Judges found that the in-depth lung tissue analysis that Dr. Oesterling performed showed no signs of asbestos fibers or asbestosis. There were signs of silica fibers, but the Board testified that there was insufficient evidence to link silica exposure to small cell cancer. The Office of Judges concluded that Mrs. Schultz failed to show that occupational pneumoconiosis

materially contributed to Mr. Schultz's death. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on August 11, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The standard for granting dependent's benefits is not whether the employee's death was the result of the occupational disease exclusively, but whether the occupational disease contributed in any material degree to the death. *Bradford v. Workers' Compensation Commissioner*, 185 W. Va. 434, 408 S.E.2d 13 (1991). West Virginia Code § 23-4-6a provides that the Office of Judges "shall affirm the decision of the Occupational Pneumoconiosis Board made following [the] hearing unless the decision is clearly wrong in view of the reliable, probative and substantial evidence on the whole record." The Occupational Pneumoconiosis Board determined that occupational pneumoconiosis was not a material contributing factor in Mr. Schultz's death. Mrs. Schultz failed to submit sufficient evidence to refute the Board's opinion. Dr. Oesterling opined that the lack of significant structural damage in the lungs due to coal dust precludes coal dust as a significant factor in Mr. Schultz's death. He felt that Mr. Schultz's smoking history caused the changes in his lungs that resulted in his death. Dr. Werntz opined that Mr. Schultz's cancer risk was increased by his smoking history and silica exposure. He noted that without the silica exposure, Mr. Schultz may not have developed lung cancer. However, the Occupational Pneumoconiosis testified that there is insufficient evidence to attribute small cell cancer to silica exposure.

Affirmed.

**ISSUED: February 1, 2022**

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**DISQUALIFIED:**

Justice Evan H. Jenkins

4