# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**TAMMIE ADAMS, DEPENDENT OF KENNETH D. ADAMS (DECEASED),**
**Claimant Below, Petitioner**

**v.) No. 24-ICA-510**      (JCN: 900071148)

**FILED**
**June 27, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**GREYHEAD MINING COMPANY, INC.,**
**Employer Below, Respondent**

**and**

**MAHON ENTERPRISES, INC.,**
**Employer Below, Respondent**

**and**

**WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER, in its**
**capacity as administrator of The Old Fund,**
**Respondent**

## MEMORANDUM DECISION

Petitioner Tammie Adams, Dependent of Kenneth D. Adams (Deceased), appeals the November 25, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent West Virginia Offices of the Insurance Commissioner, in its capacity as Administrator of the Old Fund ("Old Fund") filed a response.[1] Ms. Adams did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which rejected Ms. Adams' application for fatal dependents' benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Ms. Adams is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Old Fund is represented by Sean Harter, Esq. Greyhead Mining Company did not appear. Mahon Enterprises, Inc. did not appear.

1

Mr. Adams was evaluated by the Occupational Pneumoconiosis ("OP") Board in 1992. The claim administrator issued an order dated December 30, 1992, granting no award for OP. On June 14, 1995, the OP Board testified regarding its findings. The OP Board testified that the x-rays showed no evidence of OP. The OP Board testified that Mr. Adams had a traumatic event involving the left lower chest and diaphragm. The OP Board concluded that the decedent had 10% pulmonary impairment due to the previous traumatic injury. An Administrative Law Judge Decision dated October 3, 1995, affirmed the claim administrator's December 30, 1992, order.

A pulmonary function study performed on August 1, 2006, revealed mild reduction in the DLCO and decreased airway restriction, consistent with mild emphysema. A CT of Mr. Adams' chest dated August 25, 2006, revealed patchy alveolar infiltrates in the right upper and lower lobes suspicious for acute infiltrate such as pneumonia; tiny possibly acute infiltrates in the left upper and lower lobes; mild scarring atelectasis or scarring in the base of the left lower lobe; and mediastinal and mild right hilar lymphadenopathy. An x-ray of Mr. Adams' chest dated September 5, 2006, revealed complete resolution of previously reported pneumonic infiltrate in the right upper lobe/apex, and chronic eventration of the left hemidiaphragm with slight chronic linear atelectasis/scarring at the left lung base.

Between 2009 and 2019, Mr. Adams continued treatment with various physicians for the following relevant diagnoses: idiopathic pulmonary fibrosis ("IPF"); severe chronic GERD; chronic respiratory failure; pulmonary arterial hypertension; coal workers' pneumoconiosis ("CWP"); severe chronic obstructive pulmonary disease ("COPD") with exacerbation, hypoxemia, dyspnea, and bronchospasm; bilateral pleural effusion; pulmonary hypertension; diabetes mellitus type 2; non-sustained ventricular tachycardia secondary to hypoxemia; congestive heart failure secondary to diastolic dysfunction; elevated left hemidiaphragm; and implantation of a permanent pacemaker.

Mr. Adams underwent several x-rays between 2011 and 2018. An x-ray of the chest performed on August 2, 2011, revealed no acute chest abnormality, no evidence of metastatic disease, and stable elevation of the left diaphragm and compression atelectasis in the left lower lung. X-rays of the chest dated October 21, 2013, revealed findings consistent with CWP and moderate elevation of the left diaphragm. An x-ray of the chest dated May 31, 2016, revealed chronic interstitial lung disease, greatest in the mid to lower lung sounds; left hemidiaphragm eventration; and pleural spaces appear normal. An x-ray of the chest dated December 7, 2018, revealed worsening bilateral patchy fibrosis and fibronodular scars and chronic elevation of the left hemidiaphragm. An x-ray of the chest dated December 12, 2018, revealed extensive reticulonodular interstitial changes of the lungs predominantly in the mid and lower lung zones, and probable chronic elevation of the left diaphragm. A Roentgenographic Interpretation report dated March 10, 2019, reviewed the chest x-ray dated April 25, 2018. The film quality was a 1 and was interpreted as showing parenchymal abnormalities consistent with pneumoconiosis but no pleural abnormalities.

Mr. Adams also underwent several CT scans between 2011 and 2019. A CT of the chest performed on August 2, 2011, revealed elevation of the left diaphragm, previous right hemicolectomy, and multiple cysts in both kidneys. A CT of the chest dated August 22, 2013, revealed no local alveolar infiltrate or suspicious pulmonary parenchymal mass, findings consistent with centrilobular emphysema and possible chronic interstitial lung disease with increased involvement since the last study. A CT of the chest dated August 13, 2014, revealed cicatricial emphysematous changes versus honeycombing in the posterior basilar portions of the left lower lobe; pulmonary fibrosis consistent with a history of CWP; and pulmonary arterial hypertension secondary to pulmonary fibrosis. The chest portion of a CT from the skull base to the mid-thigh performed on October 2, 2014, revealed heterogeneous scattered ground glass opacities throughout both lungs with peripheral fibrosis and possible basilar honeycombing and no metabolically active pulmonary masses or nodules. A CT of the chest dated February 2, 2018, revealed increased pulmonary fibrosis with increased honeycombing; increased size of mediastinal lymph nodes and hilar nodal calcifications; increased cardiac enlargement; increased size of the main pulmonary artery; increased size of a left renal lesion; and new mild perihepatic ascites and pericholecystic fluid. A CT of the chest performed on June 1, 2019, revealed COPD and interstitial fibrotic changes, especially in the right lower lung zone. A CT of the chest performed on October 5, 2019, revealed COPD and interstitial fibrotic changes, especially right lower lung zone; prominent elevation of left hemidiaphragm; cardiomegaly with pacemaker; and no definite superimposed consolidated infiltrate.

Records from the United States Department of Labor dated March 25, 2014, indicate that Mr. Adams was diagnosed with restrictive disease and hypoxemia due to CWP. A radiologic interpretation report dated March 21, 2014, reviewed the film dated February 27, 2014, and determined that the film quality was a 1. The report found that there were parenchymal abnormalities consistent with pneumoconiosis but no pleural abnormalities.

Mr. Adams underwent two additional pulmonary function studies between 2014 and 2019. A pulmonary function study dated August 13, 2014, revealed lung volumes consistent with moderate restrictive lung disease. A pulmonary function study from Carilion Clinic dated April 5, 2019, revealed the presence of a moderate restrictive pattern.

Correspondence from Stephen Bergin, M.D., of Duke University, dated February 9, 2018, indicated that Mr. Adams suffered from advanced fibrotic lung disease caused by CWP. Dr. Bergin opined that Mr. Adams' CWP was caused by his occupational exposures. Dr. Bergin further opined that as a result of the parenchymal lung disease, Mr. Adams developed severe pulmonary arterial hypertension for which there were no viable treatment options, and that Mr. Adams' occupational exposures directly caused his advanced cardiopulmonary disease which would likely result in a premature demise.

In a United States Department of Labor record dated April 25, 2018, Esther S. Ajjarapu, M.D., reported a cardiopulmonary diagnosis of chronic bronchitis/legal

3

pneumoconiosis and simple CWP. Dr. Ajjarapu opined that Mr. Adams' CWP/chronic bronchitis developed from his coal dust exposure. Correspondence from Dr. Ajjarapu dated October 12, 2018, indicated that Mr. Adams had no tobacco history or congestive heart failure history. Dr. Ajjarapu opined that Mr. Adams had clinical pneumoconiosis, legal pneumoconiosis, and an abnormal physical exam. Dr. Ajjarapu reported that Mr. Adams' pulmonary impairment was due to his work in the mines and coal dust exposure. Correspondence from Shambhu Aryal, M.D., dated June 18, 2019, indicated that Mr. Adams had severe CWP which led to advanced pulmonary fibrosis, pulmonary hypertension, and chronic respiratory failure. Dr. Aryal reported that the diseases were in their advanced stages and were life-limiting.

Mr. Adams died on October 8, 2019, his Certificate of Death dated October 10, 2019, listed his immediate cause of death as right heart failure and noted interstitial lung disease as a condition that led to the cause of death. The OP Board released Findings dated April 14, 2022, in which the OP Board determined that OP was not a material contributing factor in Mr. Adams' death.

On April 4, 2024, Stephen G. Basheda, D.O., completed a Record Review report. Dr. Basheda noted that Mr. Adams was in the coal mining industry for 16 years and that this exposure put him at risk for coal dust-induced pulmonary disease. Dr. Basheda opined that Mr. Adams had clinical and radiographic findings of IPF, but no radiographic findings of CWP. Dr. Basheda explained that CWP clinically presents as multiple nodules beginning in the upper lobes and progressing to the lower lobes; while IPF presents with subpleural reticular changes that begin in the lower lobes and progress superiorly. Dr. Basheda further explained that IPF was associated with the presence of bronchiectasis, honeycombing, and groundglass changes. Dr. Basheda stated that his review of Mr. Adams' CT scans of the chest revealed classic radiographic findings of IPF and no findings of CWP. Dr. Basheda noted that although there were positive x-rays of the chest for CWP, the CT scan was the more sensitive test for evaluating the lungs. Dr. Basheda concluded that Mr. Adams passed away from IPF and that Mr. Adams's death was not caused by, contributed to, or hastened by CWP/OP.

On September 18, 2024, a final hearing was held to take the OP Board's testimony. The OP Board testified that imaging evidence showed pulmonary fibrosis, most likely IPF but that the films did not show any findings suggestive of CWP, as there was no nodular fibrosis, pleural plaques, or pleural calcifications. The OP Board testified that the basis of their opinion was the CT scans of the chest which showed reticular fibrosis with honeycombing as well as bronchiectasis, which are the hallmarks of IPF, not OP. The OP Board opined that occupational dust exposure would not have caused IPF. The OP Board testified that Mr. Adams' immediate cause of death was right heart failure caused by his lung disease. The OP Board testified that x-ray evidence up to some 18 years after his last exposure showed no evidence of OP and that it was not until 2011 that Mr. Adams started being labeled as having OP. The OP Board agreed with Dr. Basheda's opinion that CWP

4

typically begins in the upper lobes and that IPF typically begins in the lower lobes as well as his opinion that Mr. Adams' death was not caused by, contributed to, or hastened by any OP. The OP Board testified that Mr. Adams' exposure to occupational dust did not contribute in any material degree to Mr. Adams' death.

On November 25, 2024, the Board affirmed the claim administrator's order, which rejected Ms. Adams' application for fatal dependents' benefits. The Board found that OP did not materially contribute to Mr. Adams' death based on the findings of the OP Board. Ms. Adams now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Ms. Adams argues that Mr. Adams experienced sixteen years of occupational dust exposure due to employment as a coal miner. Ms. Adams further argues that the medical evidence establishes that Mr. Adams suffered from the typical symptoms of OP for many years, with increasing severity, which his treating physician "believed would lead to his premature demise." Ms. Adams also argues that Mr. Adams' death certificate indicated that interstitial lung disease was a secondary condition that led to his death. Finally, Ms. Adams argues that the OP Board and the Board disregarded the medical evidence establishing that Mr. Adams' OP directly caused his cardiac and lung disease. We disagree.

The Supreme Court of Appeals of West Virginia held in Syllabus Point 3 of *Bradford v. Workers' Comp. Comm'r*, 185 W. Va. 434, 408 S.E.2d 13 (1991), "we find

that the appropriate test under W. Va. Code 23-4-10(b) (1978) is not whether the employee's death was the result of the occupational injury or disease exclusively, but whether the injury or disease contributed in any material degree to the death." In *Rhodes v. Workers' Comp. Div.*, 209 W. Va. 8, 17, 543 S.E.2d 289, 298 (2000), the Supreme Court of Appeals of West Virginia held that the party protesting the findings of the OP Board has the burden to establish that the OP Board was clearly wrong.

Here, the Board determined that the OP Board was not clearly wrong in finding that OP did not contribute in any material way to Mr. Adams' death. The Board noted that Mr. Adams was last exposed to the hazards of OP in 1989 and there is no diagnosis of OP on record until 2011. The Board further noted that the OP Board testified that the decedent was incorrectly labeled as having OP when the lung condition was actually related to pulmonary fibrosis rather than OP. The Board found that, although there are x-rays indicating a diagnosis of OP, the CT scans are more reliable and did not reveal evidence of OP. Ultimately, the Board concluded that OP was not a material contributing factor in Mr. Adams' death.

Upon review, we conclude that the Board was not clearly wrong in finding that OP did not materially contribute to Mr. Adams' death based on the findings of the OP Board. Further, we conclude that the Board was not clearly wrong in finding that Ms. Adams failed to establish that the OP Board was clearly wrong. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's order denying Ms. Adams' application for fatal dependents' benefits.

Accordingly, we affirm the Board's November 25, 2024, order.

Affirmed.

**ISSUED:** June 27, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White